## BRADFORD v. NEW AMSTERDAM CASUALTY CO.

### No. 5875.

Court of Appeal of Louisiana. Second Circuit.

April 28, 1939.

Rehearing Denied May 29, 1939.

Madison, Madison & Files, of Bastrop, for appellant.

A. Milling Bernstein, of Monroe, for appellees.

HAMITER, Judge.

The washing of an automobile was being undertaken by plaintiff on April 17, 1937, when he slipped and straddled one of the iron beams of the grease rack on which the machine was resting. Injury resulted, so he was sent by his employer, the McDonald Tire Company of Bastrop, Louisiana, to Dr. Howard Sims for observation and treatment. The diagnosis was that a right inguinal hernia had been sustained. This physician, during the latter part of said month of April, performed an operation for the relief of the condition. On July 14, 1937, the employee was discharged as being then able to return to his work.

Workmen's compensation, at the rate provided by the provisions of the Louisiana Employers' Liability Act, was paid to him to the date of his discharge.

A joint petition signed by the employee, by his employer, and by the latter's insurer, was filed in the Fourth Judicial District Court of Morehouse Parish, Louisiana, on August 9, 1937. The parties prayed for judicial approval of the "settlement and compromise" proposed therein. The requested approval was granted through a written judgment signed by Judge Shell of that court. On the same date the employee executed a certificate in which the statement was made that said judgment had been paid and satisfied in full.

This suit was instituted on October 30, 1937, against the compensation insurer of the employer. Plaintiff seeks to set aside the aforementioned settlement and obtain an award of compensation as for total and permanent disability, less the amount already paid to him. He alleges, among other things, the occurrence of the above mentioned accident while washing the automobile as an employee of the McDonald Tire Company, and that "said accident immediately resulted in an inguinal hernia on his right side, and also seriously and permanently impaired the spermatic cord and injured the right testicle and scrotum, and making walking and stooping very painful, and rendering your petitioner totally and permanently disabled, all on account of said accident."

Defendant's exceptions of no cause and no right of action tendered to the petition were overruled.

In answering, defendant denied the existence of any disability whatever, and pleaded the judicially approved settlement in bar of plaintiff's claim.

Plaintiff's suit was dismissed at his cost, and he has appealed.

It is our belief and conclusion that the judgment of the trial court is correct on the merits of the case and we, therefore, do not pass upon the exceptions of no cause and no right of action tendered to plaintiff's pleadings.

■ The parties to the joint petition proposing the assailed settlement stated herein that, "there is a direct dispute between them as to the degree and extent of the injury complained of and the disability resulting therefrom, and that they have agreed to settle and compromise, as aforesaid, their said differences, * * * ." The exist-

ence of the mentioned dispute or disagreement, at the time of that petition's filing on August 9, 1937, is fully established by the evidence adduced, and it appears to have been a genuine and serious one. As before stated, Dr. Sims discharged the employee on July 14, 1937, as being in condition to resume employment. On July 26, 1937, a physical examination was made by Dr. B. M. McKoin, and his written report of that date, addressed to defendant's attorney, Mr. A. M. Bernstein, states in part:

"I herewith hand you a copy of my file on one, Charley Bradford, colored, male, adult injured on or about April 17th, 1937, while in the employ of the McDonald Tire Company, Bastrop, La. These records are self explanatory and should leave no doubt in your mind that the opinion of the examiner is that this man is able to resume his vocation.

"I do not believe any physician could say that the herniotomy was not a success. No one could say that Dr. Sims has not handled the case satisfactorily and his results have been good is my opinion. I think the man is unduly alarmed over the little stitch drainage and in my opinion it is practically over now and even so it does not amount to anything and will soon close.

"As regards to the slight urethral stricture, I do not believe that is giving him any trouble at this time. Further, I doubt that he is suffering from any pathology in the scrotal contents and I would disregard this as causing or would cause him any inconvenience if he should return to his work."

The employee, on the other hand, testifies that he thought that full recovery had not been effected.

When pronouncement was made by Dr. Sims on July 14, 1937, of the cessation of disability, the employee had received all compensation then due to him, or a total of $97.50, and all of his medical and hospital expenses, amounting to $234.50, were cared for by defendant. As an inducement to settle the matter, defendant proposed to pay him the additional sum of $36.40. This was agreed to and accepted by him, as hereafter shown, and the settlement in question consummated.

In view of the above mentioned substantial disagreement that existed between the parties as to the extent of the disability, the settlement was by way of a compromise under the authority of section 17 of the Louisiana Employers' Liability Statute, being Act No. 20 of 1914, as amended by Act No. 38

of 1918. Section 8, subsection 9, of that statute (as amended by Act No. 242 of 1928, p. 357) is inapplicable. Musick v. Central Carbon Co., 166 La. 355, 117 So. 277; Guillot v. Louisiana Ry. & Nav. Co., 166 La. 467, 117 So. 558; Young v. Glynn, 171 La. 371, 131 So. 51; Horney v. Scott, La.App., 171 So. 172; Calhoun v. Louisiana Delta Hardwood Lumber Co., La.App., 182 So. 362; Peyton Self v. Wyatt Lumber Co., Inc., 189 So. 327, decided by this court March 31, 1939, not yet reported [in State Reports].

Although the employee received only the additional sum of $36.40 in satisfaction and release of the claim that he urged, the undertaking of the parties was none the less a compromise. It is stated in Young v. Glynn, supra [171 La. 371, 131 So. 52], that:

"For it is of the nature of a compromise that it cannot be attacked on the ground of lesion, that is to say, for failure to receive all that one may be entitled to. Rev. Civ.Code, arts. 3078, 1860. In other words, in every compromise the hope of gaining is always balanced by the danger of losing. Rev.Civ.Code, art. 3071."

As the settlement was made in compliance and conformity with statutory authority and received the required judicial sanction from a court of competent jurisdiction, it is valid and binding on the parties thereto and will not be disturbed unless some degree of fraud attended its confection. Horney v. Scott, supra; Self v. Wyatt Lumber Co., supra.

The record discloses that defendant's attorney, after receiving the aforementioned reports of Dr. Sims and Dr. McKoin, contacted plaintiff with the view of effecting the settlement. The latter was told that in addition to the compensation already received up to July 14, 1937, and the payment of hospital and medical expenses, he would be paid $36.40 and no more. The employee then requested that the proposal be discussed with a Miss Mabel Smith, for whose family his wife worked, and this request was granted. Miss Smith was permitted to read Dr. McKoin's report of July 26, 1937, and defendant's offer was fully explained to her. It was pursuant to her advice that the employee entered into the agreement. She testifies, however, that the attorney informed her that "if he went back to work and proved that he wasn't able to work the case would be reopened." It appears from other evidence in the record that possibly Miss Smith misunderstood Mr. Bernstein, the attorney; and that he told her that the proposed settlement would be final, but if there should be a recurrence of the hernia produced by another accident or a strain while engaged in the course of his employment, a new claim would arise.

Following the discussed conversation, the employee accompanied the attorney to the home of Judge Shell. Mr. Bernstein testifies, "I explained the settlement to Judge Shell, showed him the report of Dr. McKoin, and asked him if he desired to see and talk with Charlie Bradford. That Charlie was there in the yard or on the porch— I have forgotten just which. Judge Shell said no, that he thought that the report of Dr. McKoin was sufficient and he signed the judgment of settlement and compromise."

The settlement agreement which plaintiff entered into was not, according to our appreciation of the evidence, induced by or attended with fraud, misrepresentation, imposition or ill practice; and as it is clothed with all formalities that the law requires and has statutory sanction, we must hold that he is bound thereby.

The judgment dismissing the suit at plaintiff's cost is affirmed.