112 P.2d 515

In re TOCCI.

TOCCI v. ALBUQUERQUE & CERRILLOS COAL CO.

No. 4570.

Supreme Court of New Mexico.

April 5, 1941.

Milton S. Seligman, of Albuquerque, for appellant.

Seth & Montgomery, of Santa Fe, for appellee.

SADLER, Justice.

The principal question for review is whether the trial court erred in declining to release the claimant from the terms of an agreement compromising and settling a death claim arising under the Workmen's Compensation Act of New Mexico following the death of her husband after sustaining injuries in the company's coal mine at Madrid in this state.

There is no question but that the disability suffered by the husband on September 20, 1938, consisting of a broken hip and other injuries was accidental and arose out of and in the course of his employment. The issue rendering controversial defendant's liability for compensation was that of claimant's dependency and, as contended by defendant, the further one whether death actually resulted from the injuries admittedly sustained by the husband. Death occurred unexpectedly on October 10, 1938, following the husband's injury on September 20, nearly three weeks previously, and while the claimant and two adult sons were en route from their home in Kansas to Albuquerque to pay him a visit at the hospital where he was convalescing. Arriving in Albuquerque late the night of October 10, they proceeded to the hospital early on the morning of October 11, and there were informed of the death of the husband and father the day before.

The claimant and her two sons then proceeded to Madrid on the afternoon of October 11, where the sons discussed with the company's superintendent at his office the matter of claimant's right to compensation. The discussion was continued at the superintendent's home that evening, the claimant then being present with her two sons. The following day a settlement agreement was reached, reduced to writing and signed by claimant and by the superintendent on behalf of the company. The claimant and her two sons thereupon returned to Kansas, the former accompanying the body of her husband by train and the sons returning by automobile, the means of travel employed by all in coming out to New Mexico. The settlement agreed upon called for payment of $200 to claimant in a lump sum. This she received at the time of the agreement in the form of a check which she later cashed. In due course, the settlement agreement was filed with the clerk of the district court of Santa Fe County and given a number on the civil docket of said court. It then was presented to and approved by the district judge of Santa Fe County.

Thereafter on March 25, 1939, Rose Tocci, as widow of the deceased workman, John Tocci, filed with the clerk of the district court of Santa Fe County under the docket number borne by the settlement agreement a claim against the company for compensation on account of the death of her husband as aforesaid. In the claim filed she avoided reference to the settlement theretofore made of the claim thus sued upon. However, contemporaneously with the filing of the claim and in the same proceeding, she filed a motion

to set aside the lump sum settlement agreement above mentioned. The trial below was of the issues raised by claimant's motion and defendant's answer thereto. The trial court made findings and conclusions favorable to the defendant's contentions, denied the motion and entered a judgment dismissing same. It is to review such judgment that this appeal is prosecuted. It was allowed immediately after entry of judgment.

The motion to set aside the settlement agreement was based upon allegations of actual fraud and mutual mistake. The fraud was alleged to consist of false statements of the company's superintendent that since the deceased, John Tocci, did not name any beneficiary on his application card or on his work card, under the Workmen's Compensation Law of New Mexico the claimant was not entitled to compensation for his death. The issue of mistake was injected by a trial amendment after the trial was under way and was to the effect that if the statements to the claimant were not fraudulently made, they were mistakenly made, and that the lump-sum settlement agreement was the result of a mutual mistake.

After hearing all the evidence on the issues raised by the motion and the answer thereto, the trial court made the following findings of fact, to-wit:

"1. That John Tocci, deceased, had lived separate and apart from his wife, Rose Tocci, claimant herein, for approximately ten years and had made statements known to officers and employees of defendant corporation that he did not contribute toward the support and maintenance of said Rose Tocci.

"2. That shortly after the death of John Tocci, the claimant accompanied by her two adult sons, sought out one Mr. Huber, Superintendent of said defendant corporation, and began to discuss with him the matter of Workmen's Compensation to be paid as the result of the death of said John Tocci. The said Huber advised claimant and her sons that it was his belief no compensation was due claimant, for the reason that she was not actually dependent upon said John Tocci for support. That said Huber further advised said parties that they should seek advice of an attorney in the matter. Said Huber further advised claimant and her sons that if satisfactory evidence could be produced to prove that deceased contributed to the support of claimant, that compensation would be paid as required by New Mexico Workmen's Compensation Act. He further advised claimant and her sons, that the matter did not have to be settled immediately, and that they could return to their homes in Kansas and submit evidence from there of the support by John Tocci, and if satisfactory evidence was submitted, showing actual dependency of Rose Tocci upon said John Tocci, compensation would be paid as specified by said Act.

"3. That the death of said John Tocci was wholly unexpected and came as a

surprise to his physician, his hospital attendants, and to defendant herein.

"4. That a bona fide dispute arose between claimant and defendant as to whether or not the claimant was actually dependent upon the deceased, and as to whether or not the deceased died as a result of the injuries sustained in the course of his employment.

"5. That the defendant, its officers or agents, did not intentionally or otherwise make false statements to claimant, concerning her right to compensation, and did not mislead her concerning said compensation; that during the discussion relative to compensation and at the time the 'lump sum settlement' agreement was made, claimant sought the advice of her two adult sons, who recommended to her that she should enter into the proposed agreement, and claimant acted in accordance with the advices and recommendations of her said sons.

"6. That at the time said settlement agreement was made and entered into, claimant contended she was entitled to compensation and defendant in good faith believed and contended she was not entitled to compensation; that on the execution of said agreement by claimant, the defendant paid in full the amount agreed upon therein, and in addition, paid funeral expenses in the sum of $150.00 in connection with the burial of said John Tocci; claimant accepted the amount tendered, with the knowledge and understanding that the matter in dispute was forever settled and closed.

"7. That said John Tocci was employed by Albuquerque and Cerrillos Coal Company as a coal miner in Santa Fe County, New Mexico, and on September 20th, 1938, he suffered an injury arising out of and in the course of his employment; that said John Tocci died on October 10th, 1938."

These findings became the basis of the trial court's conclusion that claimant was entitled to no relief on the motion and upon them it rested its judgment dismissing the motion.

It seems obvious from a mere reading of these findings that if the evidence was conflicting upon the issue of intentional fraud by the defendant, the findings must stand and they support the judgment of the trial court in declining to set aside the settlement agreement for actual fraud. A review of the evidence discloses that it abundantly supports the trial court in resolving against the claimant the issue of actual fraud or intent to deceive. Indeed, it is doubtful if substantial support for a contrary finding on this issue is to be found in the record.

This leaves for consideration on the main issue the contention that, if not to be overturned for actual fraud, the agreement must be rescinded for mutual mistake. The position of claimant on this question will be clarified by considering the pertinent section of the statute in the light of what transpired at the time a

settlement was agreed upon and the effect of the findings made and refused.

1929 Comp., § 156-112, so far as material reads:

"(j) The following persons, and they only, shall be deemed dependents and entitled to compensation under the provisions of this act: * * *

"2. The widow, only if living with the deceased, or legally entitled to be supported by him and actually dependent, including a divorced wife entitled to alimony and actually dependent. * * *

"5. * * * The relation of dependency must exist at the time of the injury.

"6. Questions as to who constitute dependents, and the extent of their dependency, shall be determined as of the date of the injury, * * *."

The theory of mistake rests upon this contention. Even though there was no intentional misrepresentation on the part of the superintendent in advising claimant she would have to submit evidence that her husband had been contributing to her support to entitle her to compensation; nevertheless, this reflects a mistaken belief on the faith of which both parties entered into the settlement agreement. This mistake being mutual, she is entitled to rescind. Counsel for claimant refers to the case of Merrill v. Penasco Lumber Company, 27 N.M. 632, 204 P. 72, to support his contention that mere failure of the husband to contribute to the wife's support is not de-cisive. It is well at this point to ascertain just what that case holds.

In the Merrill case, claim for compensation was made by the widow of the deceased workman on behalf of herself and three minor children. The claim was defended on the ground that actual dependency within contemplation of the statute did not exist. Compensation having been awarded by the trial court, upon a review of the award in this court the only error assigned on this issue was that claimant did not sustain the burden resting on her to establish actual dependency, since it was shown that at the time of injury and death Merrill was not actually supporting his wife and children. We held that under the circumstances of the case as disclosed by the evidence, the mere fact that the husband was not contributing to the support of his wife and children at such time was not decisive of the issue of dependency as that term is used in the statute.

The evidence disclosed the husband had been separated from his wife about two years at the time of his death; that he remained in the vicinity of their home for a short time before departing for another state; that before leaving he arranged with local merchants to furnish her with food and clothing, paying the bills for four months and, in addition, sent her money on two occasions. He then became sick and wrote a sister that he was unable to work and asking her to send him money. Shortly before his death he returned to the community where his wife lived, gave her a small sum of money and told her he

was going to support her and the children, and that he did not want her to work any longer.

Upon the showing of her needs and the reasonableness of the probability that the husband would keep his promise of support, the trial court awarded compensation and we sustained the award. Among other things, we said: "While the statute uses the word 'actually' as limiting the word 'dependent,' this can mean nothing more than that the widow must have been dependent in fact as well as in law. * * * It seems to be well settled by authority that the existence of a marriage with consequent liability to support does not of itself prove actual dependency, and instances easily come to mind of married women who are not actually dependent upon their husbands for support. Many statutes create a presumption of dependency in favor of certain classes, but ours does not, following in this respect the original English act. But just as the existence of the marital status does not of itself prove dependency, so the lack of actual support by the husband does not of itself negative dependency. The failure to support is only one circumstance for consideration. The reasons for it, the length of its continuance, the mutual attitude and means of the parties, the probable resumption of duty, and other similar matters may have a distinct bearing on the subject. If dependency were determined only by the fact of contribution to support, a wife and children might be dependent one week and cease to be the next according to the caprice of the husband and father. Such a theory lacks support from authority."

See, also, Dimas v. Albuquerque & Cerrillos Coal Company, 35 N.M. 591, 3 P.2d 1068.

As stated in the Merrill case, the failure to support is only one of several factors to be considered in determining dependency. The existence of the marriage relation does not alone prove it and the failure by the husband to perform one of the marriage relation's most compelling obligations, viz., support, does not alone negative it. And so it is claimant's contention that because, as claimed both she and the superintendent acted in the mistaken belief that it was decisive if the husband was not rendering support at the time of injury, a right to avoid the agreement is established.

The trouble with this argument, as with that on the issue of actual fraud, is that it rests on a false premise. The findings do not support the claimant in the contention that there was a mistake, mutual or otherwise. An examination of the pertinent findings will be helpful. The trial court found that, following the death of John Tocci, the claimant and her two adult sons sought out the defendant's superintendent and began to discuss with him her claim to workmen's compensation as a result of the death; that the superintendent stated his belief that she was not entitled to compensation because "not actually dependent on John Tocci for support" and suggested that they should seek the "advice of an attorney in the matter".

The superintendent further told them as found by the court: "* * * that if satisfactory evidence could be produced to prove that deceased contributed to the support of claimant, that compensation would be paid as required by New Mexico Workmen's Compensation Act."

In addition, he informed ·them, as the court found, that the matter did not have to be settled immediately, suggesting that they return to their home in Kansas and submit evidence from there of support by the husband, and that "if satisfactory evidence was submitted, showing actual dependency of Rose Tocci upon John Tocci, compensation would be paid as specified by said Act".

The court also found that a bona fide dispute existed between the claimant and the company as to whether she was actually dependent upon the deceased. And, finally, there was the affirmative finding touching this issue: "5. That the defendant, its officers or agents, did not intentionally or otherwise make false. statements to claimant, concerning her right to compensation, and did not mislead her concerning said compensation; that during the discussion relative to compensation and at the time the 'lump sum settlement' agreement was made, claimant sought the advice of her two adult sons, who recommended to her that she ·should enter into the proposed agreement, and claimant acted in accordance with the advices and recommendations of her said sons."

The findings of which we have been speaking are the court's affirmative find-

ings. Their meaning is emphasized by the action of the court on certain findings requested by claimant. It refused to find at her request that she was actually dependent on deceased for support. In two companion requests for findings the claimant squarely presented to the trial court her dual theory for relief against the settlement agreement. Specially requested finding No. 12 declared that the statements and representations made by the employer to claimant were false and known so to be by the employer and were intentionally made for the purpose of misleading her and to cause her to accept less compensation than that to which by law she was entitled. The finding was refused. Truly, this refusal conforms with the trial court's affirmative findings on the issue of actual fraud.

The claimant's specially requested finding No. 13 is as follows: "That the statements and representations made by the Employer to Claimant as to the reasons why she was not entitled to compensation for the death of deceased were erroneous and incorrect, but were believed by both Claimant and the Employer to be correct, and that said Lump Sum Settlement was executed under such belief."

The request to adopt this finding was denied. The trial court's action in refusing this requested finding which presented claimant's theory in the facts on the issue of mistake is in entire accord with its affirmative finding already mentioned that "the defendant, its officers and agents, did

not intentionally or otherwise make false statements to claimant, concerning her right to compensation, and did not mislead her concerning said compensation."

It thus seems obvious from a review of the findings that both the issues of fraud and mistake, mainly relied upon by claimant to avoid the settlement agreement, have been resolved against her by the trial court. The most that can be said of the findings in support of claimant's position is that they support the view that the company's superintendent did advise her that he was willing to accept satisfactory evidence of support by John Tocci as settling her right to compensation so far as the issue of actual dependency was concerned. It would be going right in the face of the findings made and refused to hold it to be before us as a fact that she was informed that a failure to furnish evidence of actual support would foreclose the right to compensation. If there were seeming inconsistency in the findings on the issue of mistake, and we find none when considered together, it is our duty to endeavor to reconcile them, before convicting the trial court of having made directly contradictory findings. Hartzell v. Jackson, 41 N.M. 700, 73 P.2d 820.

Counsel for the claimant argues that the very terms of the settlement, the release for $200 of a claim which, if valid, might ultimately result in the collection of $3,000 in installments, suggest fraud and imposition, or misunderstanding. But these are the very issues tried before the district court and resolved against the claimant.

It was indeed disputable whether claimant was entitled to anything at all. Without intimating that in a trial on the merits of her claim, she could not have prevailed on the issue of dependency, there is much in evidence relevant to the issues raised by the motion, which, if believed, easily could have resolved the question against her. Indeed, some of it was undisputed, as the fact that the claimant and deceased had been separated for ten years and that they had not seen each other for nine years. And, even though the question whether there was a failure to support be deemed not undisputed, if the evidence were the same in a trial on the merits as on the motion, a finding that at the time of injury and for some years previously there had been no contributions by deceased to claimant's support, would be abundantly supported in the evidence.

These considerations are mentioned, not as reflecting a view (for we express none) that claimant could not even hope for recovery if the settlement were avoided, but rather to demonstrate that there was no certainty in the matter and that the whole claim was of doubtful validity as indicated by the evidence on the motion. Cf. Johnson v. Republic Iron & Steel Company, 212 Ala. 149, 102 So. 44; Collwell v. Bedford Stone & Construction Co., 73 Ind.App. 344, 126 N.E. 439; In re Newman's Case, 222 Mass. 563, 111 N.E. 359, L.R.A.1916C 1145; Finn v. Detroit, Mt. Clemens & Marine City Railway, 190 Mich. 112, 155 N.W. 721, L.R.A.1916C, 1142.

It is not a proper function of the courts to relieve either party to a contract from its binding effect where it has been entered into without fraud or imposition and is not due to a mistake against which equity will afford relief. It is not enough that in the light of subsequent events the agreement of settlement proves to have been unwise or unfortunate. Wooley v. Shell Petroleum Corporation, 39 N.M. 256, 45 P.2d 927; Moruzzi v. Federal Life & Casualty Company, 42 N.M. 35, 75 P.2d 320, 115 A.L.R. 407.

Nor are we impressed by claimant's contention that a different and more liberal rule prevails, absent statutory authority, for setting aside a release in a workmen's compensation case than in a common-law action for damages. We approve the remarks of the Supreme Court of a sister state in Harp v. Red Star Milling Company, 121 Kan. 451, 247 P. 856, 858, in this connection, to-wit: "Plaintiff undertakes to distinguish the Tucker Case [Tucker v. Atchison, T. & S. F. R. Co., 120 Kan. 244, 243 P. 269] on the ground the accident was one for damages, and not, as in this instance, one for compensation. In each case plaintiff was obliged to get rid of a release before he could proceed. Cancellation is a remedy characteristically conditioned and constant for all cases, whatever the nature of consequential proceedings may be."

It is also urged upon us that the settlement agreement should be set aside for failure to observe certain statutory requirements in securing the judgment approving the settlement agreed upon by the parties. The contention is based on the interpretation given our act as a whole by counsel and the fact that no claim for compensation was filed but instead the settlement agreement was docketed, presented to the district judge for action and approved by ·him. The paper was designated "Lump Sum Settlement" and captioned: "In the Matter of the Application of Rose Tocci, for Compensation under the Workmen's Compensation Act of New Mexico, as Amended, for the death of John Tocci". It recited that the claim had been settled to the satisfaction of all concerned for the sum of $200 and that claimant agreed to accept said sum in full and complete settlement. Below the signatures of the parties was an executed receipt by claimant for the amount agreed upon in settlement. This is followed by the endorsement "Approved this 17th day of October, 1938", and signed "David Chavez, District Judge".

Counsel for claimant presents a vigorous argument on the insufficiency of this as statutory approval of a settlement because it fails to disclose the amount claimed, the relationship of. claimant to deceased, whether there were minor dependent children, whether the matter in dispute was a question of law or fact, and numerous other claimed shortcomings. It is also assailed because not acknowledged or sworn to.

1929 Comp., § 156-124, provides: "The district court in which the right to com-

pensation provided herein is enforceable shall at all times have the right and power to authorize, direct or approve any settlement or compromise of any claim for compensation hereunder by any injured workman or his personal representative or dependents, or any person appointed by the court to receive payment of the same, for such amount and payable in installments or lump sum or in such other way and manner as the court may approve."

 In view of this authorization we see no reason to question the district judge's approval of this settlement. The approval bears his signature and we must assume that before acting he satisfied himself that the agreement was entitled to the approval he gave it. This thought disposes of the many shortcomings of recital in the settlement agreement put forward by counsel as rendering it jurisdictionally defective. Certainly, it showed a settlement of a workmen's compensation claim and we cannot suppose the district judge gave it approval without learning what it was all about. Nor do we think the various statutory provisions discussed at great length by counsel are to be impressed with the meaning claimed for them in this connection. We overrule this claim of error. Cf. Bradford v. New Amsterdam Casualty Co., La.App., 190 So. 210.

Other errors are assigned upon the admission of evidence and the refusal of requested findings. It would unduly lengthen this opinion to treat each in detail. We find no merit in any of them.

It follows from what has been said that the judgment of the trial court should be affirmed, and it is so ordered.

BRICE, C. J., and ZINN, MABRY, and BICKLEY, JJ., concur.