299 P.2d 457

Mildred Wallene MENDENHALL and Stanley Mendenhall, her husband, Appellants,

v.

H. P. VANDEVENTER, d/b/a Yellow-Checker Cab Company, Appellee.

No. 6073.

Supreme Court of New Mexico.

June 27, 1956.

Joseph L. Smith, Henry A. Kiker, Jr., Albuquerque, Waldo Spiess, Las Vegas, for appellants.

Iden & Johnson, Richard G. Cooper, Albuquerque, for appellee.

LUJAN, Justice.

Appellants, as plaintiffs, sued appellee for $28,575, for personal injuries and property damages, alleged to have been caused by a collision between the automobiles of appellants and appellee, and for medical and hospital expenses. Appellee answered by a general denial, contributory negligence, and set up a release, executed by appellants one month and nine days after the collision, in which appellants acknowledged the receipt of $1,353.75, in full settlement for all injuries and property damages resulting from the accident.

Appellants by reply admitted the execution of the release, but sought to avoid the effects thereof by certain allegations respecting mutual mistake.

After joinder of issues, defendant moved for a separate and prior trial on the issues raised by appellants' reply to the affirmative defense, under the provisions of Rule 42(b) of the Rules of Civil Procedure, to the effect that "The court in furtherance of convenience or to avoid prejudice may order a separate trial of any claim * * * or of any separate issue * * * or issues." The motion was sustained and trial was had on the issue of the validity of the release. At the close of all of appellants' evidence, motion was made by the defendant for a

directed verdict, which was sustained by the court, and appellants have appealed.

Appellants predicate their appeal upon four alleged errors which they argue under two points: (1) That the court erred in granting defendant's motion for a separate trial on the validity of the release executed by them and in trying the issues separately from the remaining issues; and (2) that the court erred in directing the jury to return a verdict in favor of the defendant and against plaintiffs.

■ The granting of a motion for a separate trial on the issue of the validity of a release is a matter resting within the sound discretion of the trial court, and will not be disturbed unless there is a clear abuse of such discretion shown. There was no abuse of this discretion in the instant case.

In Moore's Federal Practice, Vol. 5, p. 1217, § 42.03, it is said:

"A separate trial may be appropriate where defendant in a negligence action pleads a release, if the court believes the jury may be prejudiced by trying the issue as to the existence and validity of the release with the issues on the merits."

■ Inasmuch as the issue arising upon an affirmative defense, and the reply thereto, is properly an issue in an action to recover for personal injuries, if the reply states facts sufficient to avoid a release which a plaintiff admits he executed and delivered, receiving the money consideration named therein, this would seem to us peculiarly a case where a separate issue as to the validity of a release should be first tried. The danger which may result from attempting to try all of the issues at one time is that the evidence upon the defendant's negligence, or plaintiff's freedom from contributing negligence may create an atmosphere which will produce an unconscious influence upon the triers of fact as to the entirely disconnected and distinct issue of the validity and sufficiency of the release. The rule above referred to has useful application to an issue which, if determined in one way, will end the litigation and render a trial upon the merits unnecessary.

■ The facts of the case at bar made it clear that the issue of the validity of the alleged release should be tried separately. It is appellants' own conduct in signing the release and accepting the $1,353.75 which created the release issue. In view of this action of appellants, they are hardly in a position to complain of the granting of the motion. In furtherance of the convenience of the parties and also of the court and to avoid any prejudice which may arise by trying all of the issues at one time, the issue of the validity of the release was correctly tried first. See, Larsen v. Powell, D.C.1954, 16 F.R.D. 322; Bowie v. Sorell, 4 Cir., 1953, 209 F.2d 49, 43 A.L.R.2d 781; Kiloski

v. Pennsylvania R. Co., D.C.1952, 103 F. Supp. 390; Bedser v. Horton Motor Lines, 4 Cir., 1941, 122 F.2d 406.

On December 7, 1952, the appellant, Mildred Wallene Mendenhall, was injured in an automobile accident while driving the family car. There was a collision between it and a car driven by defendant's employee. Her injuries consisted of lacerations on the lower lip and multiple contusions and abrasions, with none of which we are now concerned. She also sustained a comminuted fracture of the right ulna which required surgery. On December 8, 1952, Dr. David G. Clark, appellants' own physician performed an operation on the arm and at that time inserted an intermittenary pin to form a union of the bones. He estimated that it would take from four to six weeks for recovery.

Several weeks after the accident a claim adjuster for the defendant called at the Mendenhall home to determine its liability and the feasibility of a settlement. Prior to the settlement the adjuster talked to appellants' physician, on two or three occasions, relative to Mrs. Mendenhall's injuries. The doctor informed him that she would recover in a matter of four or six weeks and that she would have the wire (intermittenary pin) removed from her elbow. On January 16, 1953, the appellants executed the following instrument:

Release of All Claims

"That the Undersigned, being of lawful age, for the sole consideration of Thirteen Hundred Fifty Three and 75/100 Dollars ($1353.75) to the undersigned in hand paid, receipt whereof is hereby acknowledged, do/does hereby and for my/our/its heirs, executors, administrators, successors and assigns, release, acquit and forever discharge Yellow Checker Cab Company and John H. Webb Jr. and his, her, their, or its agents, servants, successors, heirs, executors, administrators and all other persons, firms, corporations, associations or partnerships of and from any and all claims, actions, causes of action, demands, rights, damages, costs, loss of service, expenses and compensation whatsoever, which the undersigned now has/have or which may hereafter accrue on account of or in any way growing out of any and all known and unknown, foreseen and unforeseen bodily and personal injuries and property damage and the consequences thereof resulting or to result from the accident, casualty or event which occurred on or about the 8th day of December, 1952, at or near Intersection of Fifth Street and McKinley Ave. in Albuquerque, New Mexico.

"It is understood and agreed that this settlement is the compromise of a

doubtful and disputed claim, and that the payment made is not to be construed as an admission of liability on the part of the party or parties hereby released, and that said releases deny liability therefor and intend merely to avoid litigation and buy their peace.

"The undersigned hereby declare(s) and represent(s) that the injuries sustained are or may be permanent and pregressive and that recovery therefrom is uncertain and indefinite and in making this Release it is understood and agreed that the undersigned rely (ies) wholly upon the undersigned's judgment, belief and knowledge of the nature, extent, affect and duration of said injuries and liability therefor and is made without reliance upon any statement or representation of the party or parties hereby released or their representatives or by any physician or surgeon by them employed.

"The undersigned further declare(s) and represent(s) that no promise, inducement or agreement not herein expressed has been made to the undersigned, and that this Release contains the entire agreement between the parties hereto, and that the terms of this Release are contractual and not a mere recital.

"The undersigned has read the foregoing release and fully understands it.

"Signed, sealed and delivered this 16 day of January, 1953.

"Caution: Read Before Signing Below

(sgd.) Mrs. Wallene
Mendenhall    LS
(sgd.) Stanley Mend-
enhall        LS
"(Sgd.) Mrs. Guido Del Frate
Witness
Mrs. Joyce B. Clahorn
Witness"

It will be noted that the release is, in its terminology, sufficient to indicate that what the parties sought to accomplish by its execution was to end, once and for all, any contention between the parties as to compensation for personal injuries, property damages and possible litigation. It was a compromise of all claims of complaint against the defendant growing out of the accident.

If the release is a full settlement and satisfaction of appellants' claim, and it was not obtained by fraud and deceit, the trial court did not err in granting defendant's motion for a directed verdict and in directing a verdict in his favor.

The appellant, Mildred Wallene Mendenhall, did not recover of her injury as anticipated by her doctor within four or six weeks, and a second operation was performed on February 18, 1955, at which time the pin was removed from her arm. In this connection the doctor testified:

282

"Q. And was there anything, Doctor, prior to January 16, 1953, to lead you to believe that recovery would be complicated in this case, or that additional surgery would be necessary? A. No, sir. If I had been forced to give a guess at this time, I would say that the alignment was good and it looked like we were going ahead to an uncomplicated union, and I did not expect any further complications."

So far as releases from personal injury claims are concerned, it is generally held that "where the parties are regarded as having contracted with reference to future possibilities, and there is no fraud or other inequitable conduct by the release," a release "cannot be avoided on the ground of mistake merely because the injuries prove more serious than the releasor at the time of executing the release believed them to be." Pom.Eq.Jur., 5th Ed., § 871d. See, also, Annotation in 48 A.L.R. at page 1464. There is no contention of fraud in the instant case.

In Farrington v. Harlem Savings Bank, 280 N.Y. 1, 19 N.E.2d 657, it is said:

"* * * No doubt the plaintiff had a perfect right to agree to settle for the injuries which were known and for all other injuries which might result, and such an agreement would be binding upon him no matter how serious the result of the injuries might thereafter turn out to be, provided the agreement was fairly and knowingly made."

We find the following language in 53 C.J. § 29, p. 1212:

"* * *. But a mistake in prophecy, or in opinion, or in belief relative to an uncertain future event, such as the probable developments from, quickness of recovery from, and the permanence of, a known injury, is not such a mutual mistake as will avoid the release. * * *" See, also, 76 C.J.S., Release § 25, p. 646.

Applying the rule of law, as above laid down, to the facts in the instant case, it seems to us that any mistake that may have been made by appellants' doctor was not as to a known injury, to wit, a fractured ulna. That was an observable injury which subsequently failed to clear up during the time anticipated by the doctor. He erred in his prognosis. It was with reference to this injury that settlement was effected and whatever mistake was made was not as to the injury as it manifested itself on Mrs. Mendenhall's limb, but as to what might happen in the course of the attempted cure. Mrs. Mendenhall knew she had a broken ulna; the doctor knew it and so did the adjuster. There was no mistake as to that particular injury, but merely an incorrect prognosis and not diagnosis.

Particularly applicable to the question before us is the language of Judge Sanborn, in the case of Chicago & N. W. Ry. Co. v. Wilcox, 8 Cir., 116 F. 913, 914, where he points out the difference between prognosis and diagnosis and said, after so doing:

"* * * Again, it is not every mistake that will lay the foundation for the rescission of an agreement. That foundation can be laid only by mistake of a past or present fact material to the agreement. Such an effect cannot be produced by a mistake in prophecy or in opinion, or by a mistake in belief relative to an uncertain future event. A mistake as to the future unknowable effect of existing facts, a mistake as to the future uncertain duration of a known condition, or a mistake as to the future effect of a personal injury, cannot have this effect, because these future happenings are *not facts,* and in the nature of things are not capable of exact knowledge; and everyone who contracts in reliance upon opinions or beliefs concerning them knows that these opinions and beliefs are conjectural, and makes his agreement in view of the well-known fact that they may turn out to be mistaken, and assumes the chances that they will do so. Hence, where parties have knowingly and purposely made an agreement to compromise and settle a doubtful claim, whose character and extent are necessarily conditioned by future contingent events, it is no ground for the avoidance of the contract that the events happened very differently from the expectation, opinion, or belief of one or both of the parties." (Emphasis ours.)

■■ We are abundantly satisfied that the following pronouncement in the case of Moruzzi v. Federal Life & Casualty Co., 42 N.M. 35, 75 P.2d 320, 326, 115 A.L.R. 407, rules this case.

"The check as tendered Moruzzi clearly states the purpose for which the same is tendered, and the release clearly sets forth the conditions under which Moruzzi signed the check and received the money. Though the amount paid Moruzzi appears ridiculously small, considering the maximum liability under the terms of the insurance policy, yet it is not the province of this court to make the contract for the parties, or guide them in their business affairs. In the absence of fraud, undue influence, or mutual mistake, we cannot set aside or avoid the release.

"The general rule is that in order to set aside or avoid a written release, the evidence must be clear and con-

vincing and beyond a reasonable controversy. See 53 C.J., Release, 1283 et seq., §§ 103 to 109, inclusive.

"There is nothing in the record before us showing fraud or undue influence. There is likewise no showing of any mistake in the legal sense. Moruzzi knew that he had been injured. He did not know that the future effects and results of the injury would be death. The effects of the injury might have been temporary total disability or permanent total disability. * * *

"It is the theory of the appellee that because Moruzzi did not know he was going to die as a result of the injury, therefore the release which he executed is void or voidable for mistake. Moruzzi may or may not have foreseen death. Unforeseeability, however, is not a 'mistake' in the legal sense." See, also Tocci v. Albuquerque & Cerrillos Coal Co., 45 N.M. 133, 112 P.2d 515.

It follows from what has been said that the judgment of the trial court should be affirmed.

It is so ordered.

COMPTON, C. J., and SADLER and McGHEE, JJ., concur.

KIKER, J., not participating.