404 P.2d 289

**Marvin A. JONES, Plaintiff-Appellant,**

**v.**

**NEW MEXICO SCHOOL OF MINES, aka New Mexico Institute of Mining and Technology, Defendant-Appellee.**

**No. 7620.**

Supreme Court of New Mexico.

July 19, 1965.

Melvin L. Robins, Albuquerque, for appellant.

McAtee, Toulouse, Marchiondo, Ruud & Gallagher, Mary C. Walters, Albuquerque, for appellee.

MOISE, Justice.

At the close of plaintiff's case, a motion for a directed verdict in favor of defendant was sustained, and thereafter judgment dismissing the cause was entered. Plaintiff appealed and here asserts that the court erred in so doing.

We have stated many times that it is error for the court to direct a verdict in favor of a defendant at the close of plaintiff's case unless plaintiff has presented no facts which would support a judgment in his favor. Edwards v. Ross, 72 N. M. 38, 380 P.2d 188. When considering the motion, the court must look at the evidence in a light most favorable to plaintiff and must indulge every inference therein in support of plaintiff, disregarding all un-

favorable considerations. Gibson v. Helms, 72 N.M. 152, 381 P.2d 429; Hutchison v. Boney, 72 N.M. 194, 382 P.2d 525. If reasonable minds may differ as to the conclusion to be reached under the evidence or permissible inferences to be drawn therefrom, the question is one for the jury and it is error to direct a verdict. Bell v. Ware, 69 N.M. 308, 366 P.2d 706.

We will briefly review the evidence in the light of these rules. On February 1, 1961, plaintiff together with one Reverend E. Y. Folk went to the golf course operated by defendant, where they paid the required green fee to the pro on duty to play golf on the course. Plaintiff had played the course 35 to 50 times over the previous 6 years. After plaintiff's second shot, the ball came to rest at the foot of a steep grassy incline leading to the first green. Before making his approach shot to the green, plaintiff climbed the hill so that he could see where the cup was located (the location of cups on the green are changed periodically). Having determined where the cup was, plaintiff turned to go back to his ball at the bottom of the hill. After taking a few steps his feet slipped out from under him and he fell to the ground. He rolled or slid to the bottom of the hill, losing consciousness and suffering serious injuries. Plaintiff testified that he was wearing "ribble" rubber soled shoes and that he did not see any ice on the hill, nor did he know what caused him to slip and fall.

Reverend Folk testified that he did not see plaintiff fall, but saw him lying at the bottom of the hill. Reverend Folk further testified that upon examination of the general area where plaintiff fell he could see one-half to three-quarters of an inch of ice imbedded under the grass on the hill slope and could hear ice crunching under his feet and there was a path like where a deer had been dragged showing where plaintiff slid down the hill. Also, he stated the grass was wet and there was water at the bottom of the hill where plaintiff was lying.

The evidence further showed that there had been a heavy snow on December 8, 1960, whereupon the course had been closed to play until January 26, 1961. In the meantime much effort had been exerted to speed clearing of the course so play could be resumed, including spraying water on the snow. Also, it appears that at some time while snow was present, children had been sledding on the hill where the accident occurred.

After the course was reopened on January 26, it snowed again and the course was closed on January 27. On January 28, it was again opened and eight people played. Fifty-three people played on January 29, 7 on January 30, 9 on January 31 and 10 on February 1, the date of plaintiff's injury. No one other than plaintiff had slipped or fallen so far as the pro was aware.

In De Baca v. Kahn, 49 N.M. 225, 232, 161 P.2d 630, we stated the rule applicable

between a store owner and his customer in the following language:

"We are committed to the view that the proprietor of a store is not an insurer against accidents to his customers but is bound only to exercise reasonable care to keep his premises, which the public is tacitly invited to use, safe for that purpose. Furthermore, the mere fact that an invitee falls on the floor of a store does not of itself raise a presumption of negligence on the part of the owner. What constitutes due care of an inviter is always to be determined by the circumstances and conditions surrounding the transaction under consideration.

"The measure of defendant's duty is that of reasonable care; he was bound to exercise reasonable care to keep his premises safe for the ingress, progress and egress of customers and other authorized visitors. See Mona v. Erion, [223 App.Div. 526, 228 N.Y.S. 533], supra; Weller v. Consolidated Gas Co., 198 N.Y. 98, 91 N.E. 286, 139 Am.St. Rep. 798; Cook v. Great Atlantic & Pacific Tea Co., 244 App.Div. 63, 278 N.Y.S. 777."

In Mahoney v. J. C. Penney Company, 71 N.M. 244, 260, 377 P.2d 663, 674, we find the rule stated thus:

"* * * What is required is that the inviter do what a reasonably pru-

dent person would do under the particular circumstances, either to warn his invitees of any known or foreseeable danger, or to keep the premises reasonably safe in the absence of such warning. This, after all, is not a novel approach to tort liability."

This rule, together with the further consideration to the effect that a store owner is not the insurer or guarantor of the safety of his customers or business invitees, has been repeated by us many times. See, e. g., Hallett v. Furr's, Inc., 71 N.M. 377, 378 P.2d 613.

■ Although we are here considering the duty of the operator of a golf course to its patrons, and not of a merchant to his customers, we see no reason for the application of a different rule. In the only case involving an injury on a golf course to which our attention has been called, we find support for this conclusion. In Farfour v. Mimosa Golf Club, 240 N.C. 159, 81 S.E. 2d 375, 378, it is said:

"As to the owner, the general rule is that he is not the insurer of the safety of patrons, but he owes to them only what, under particular circumstances is 'ordinary' or 'reasonable' care."

To the same general effect are the cases involving the duty of operators of places of amusement to their patrons generally. See annotation in 16 A.L.R.2d 912, 916.

We must now determine whether reasonable minds could differ on the question of whether or not defendant was negligent under the facts and circumstances related above. We conclude, after weighing the facts as required by the rules set forth above, together with our slip and fall cases, that the court erred in directing a verdict. Although Farfour v. Mimosa Golf Club, supra, came to a different result, it is clear that if the plaintiff there had not been at a place outside the fairway and where he was not supposed to be, the result would have been otherwise. The accident here occurred in the middle of the fairway where plaintiff and all other players properly traversed.

Concerning defendant's passing comments that under the proof plaintiff must have been negligent because of the ice which he said he did not see, but which Reverend Folk testified he saw, or that defendant had assumed the risk if he proceeded under the circumstances, we would only add that here, too, we think reasonable minds could differ and that the plaintiff had made a prima facie case for recovery. Giese v. Mountain States Telephone and Telegraph Company, 71 N.M. 70, 376 P.2d 24; Crenshaw v. Firestone Tire & Rubber Company, 72 N.M. 84, 380 P.2d 828; Curd v. H. B. Zachry Company, 72 N.M. 427, 384 P.2d 695, are not to the contrary.

Defendant asserts that " * * * nowhere did appellant show that he was watching where he was going—in broad daylight," citing Giese v. Mountain States Telephone and Telegraph Company, supra. The difficulty with this argument is that plaintiff (appellant) did not have to show that he was free from contributory negligence. The burden of such proof is on the defendant. Jackson v. Southwestern Public Service Co., 66 N.M. 458, 349 P.2d 1029; Williams v. City of Hobbs, 56 N.M. 733, 249 P.2d 765. Again, Giese v. Mountain States Telephone and Telegraph Company, supra, says nothing to the contrary and does not support defendant's position.

The case is reversed and remanded with instructions to reinstate it on the docket and to proceed in a manner consistent herewith.

It is so ordered.

CHAVEZ and COMPTON, JJ., concur.

CARMODY, Chief Justice, and NOBLE, Justice (dissenting).

Our decisions in De Baca v. Kahn, 49 N.M. 225, 161 P.2d 630; Kitts v. Shop Rite Foods, 64 N.M. 24, 323 P.2d 282; Barrans v. Hogan, 62 N.M. 79, 304 P.2d 880, 61 A.L. R.2d 1 and Seal v. Safeway Stores, 48 N. M. 200, 147 P.2d 359, require a plaintiff, to entitle him to recover, to show "some specific act of negligence on the part of the defendant, or the existence of conditions so obviously dangerous as to amount to evidence from which an inference of negligence would arise."

The fact that some 87 persons had played golf over this same fairway within the days immediately preceding this accident, without anyone having slipped or fallen, or so far as the evidence discloses, seen ice on the slopes, negatives any reasonable inference of a condition so obviously dangerous as to amount to evidence of negligence on the part of the owner or operator of the golf course. Furthermore, the evidence that the ice was covered by grass and not observable until one actually stepped upon it clearly denies the existence of a condition obviously dangerous.

It is apparent from the facts of this case that the proprietor of the golf course could only have been made aware of this particular icy place by a minute foot-by-foot inspection. This he is not required to do. He is only required to make a reasonable inspection of the premises and owes to patrons only ordinary or reasonable care. Annotation, 22 A.L.R. 610.

See, particularly, Patterson v. City of Lexington, 229 N.C. 637, 50 S.E.2d 900, 901, where it was said that the owners of a ball park are not insurers of the safety of its patrons and are held only to the obligation of exercising ordinary care to prevent injury which could have been reasonably foreseen. Since the icy spot in this case was so covered with grass that when walking up and down that particular fairway one would not see it from a short distance away, this case falls within the rule of the cases cited supra.

Notwithstanding the contrary view expressed by the majority, we think the effect of the majority opinion is actually to make the golf course owner or operator an insurer of the safety of its patrons.

For these reasons, we are compelled to dissent from the majority opinion.