431 P.2d 72

**Clifton A. SMITH, Plaintiff-Appellant,**

v.

**William W. LOOS, Defendant-Appellee.**

**No. 40.**

Court of Appeals of New Mexico.

July 21, 1967.

Certiorari Denied Aug. 25, 1967.

---

Don G. McCormick, McCormick, Lusk, Paine & Feezer, Carlsbad, for appellant.

Paul Butt, Shaffer, Butt & Bass, Albuquerque, for appellee.

## OPINION

OMAN, Judge.

Plaintiff brought suit to recover damages for personal injuries allegedly sustained by him as a result of an intersection collision of motor vehicles which occurred on June 3, 1966. The claim was predicated upon alleged negligence of defendant in causing the collision.

In addition to a general denial, defendant pleaded certain affirmative defenses, one of which was that the parties had effected

a full settlement of plaintiff's claim for injuries, and that plaintiff had executed and given defendant a release from all liability in the premises. A copy of the release was attached to the answer and is as follows:

"For the sole consideration of One Hundred Fifty and 00/100 DOLLARS, the receipt of which is hereby acknowledged, I do hereby release and forever discharge: *William W. Loos* from all claims, demands and right of action whatsoever, which I ever had, which I now have or can have on account of injury or injuries, both known and unknown, to person, damage to property, sustained by me or which may hereafter arise, in consequence of an accident or occurrence which occurred on or about the 3rd day of June, 1966, at or near Elm and McKay, Carlsbad, N. M.

"It is agreed that the payment of the above sum is not to be construed as an admission by or on behalf of the above named party or parties of any liability whatsoever on account of said accident, and the above sum is accepted in full satisfaction and release of any and all claims whatsoever arising from the above mentioned accident.

"Executed at Carlsbad this 9th day of June, 1966.

Witnessed by:

s/ Esther H. Smith

s/ H. M. Shulenburg

s/ Clifton Allen Smith [SEAL]

s/ Esther H. Smith [SEAL]"

————◆————

A separate trial was had before a jury on the issue of the validity of the release. The trial court sustained defendant's motion for a directed verdict made at the close of plaintiff's case, and plaintiff has appealed from the judgment entered pursuant to said verdict.

As a result of the collision, plaintiff sustained a blow to his head of sufficient force and severity to immediately raise a knot or bump thereon, and to cause the windshield, with which it came in contact, to be cracked and shattered in a star-like pattern. He also sustained injuries to his chest, ribs and neck. He was examined by his doctor on the day of the accident and on the following day. At the times he saw the doctor he was sore all over and was suffering from headaches and severe pain in his neck. The doctor, in addition to conducting his examination, treated plaintiff's neck with heat, prescribed some pain pills, and advised plaintiff that he had been shaken up a bit, that he would be sore and should take it easy for a while, and that if any further complications should develop, to call and the doctor would see him. He was not discharged from the doctor's care.

Plaintiff returned to his regular employment on Monday, June 6. On June 9 he talked with a Mr. Shulenburg, an adjuster for defendant's public liability insuror, on two occasions. On the second of these occasions, which was at plaintiff's home, he called the doctor, the hospital and the pharmacy in order to verify the amounts of their bills before proceeding to settle. In his conversation with the doctor he advised the doctor that he was discussing settlement of his case with Mr. Shulenburg. Also, as a part of the settlement negotiations, he advised Mr. Shulenburg that his neck was a little sore and that he may need some chiropractic treatments. He testified that they proceeded from there.

He agreed to execute the release for $150.00, and did so. He testified that he read the release before signing it, that he understood the effect of the release to be just what the release stated, and that it was a release of all claims.

At the time he executed the release on June 9 and until June 21, he was perform-

ing the full duties of his employment. On direct examination he testified that during this period the soreness was leaving and he was gradually getting better. On cross-examination and upon being questioned by the court he stated his neck had bothered him to some extent from the date of the accident until after he executed the release, and that he had told Mr. Shulenburg that his neck was hurting, that he was having headaches, and that he was "in pretty much pain all the time." He also told the court he understood what he was telling Mr. Shulenburg, that he knew what he was doing, and that he understood the release "meant exactly what it said."

At the time of effecting the settlement and the execution of the release, Mr. Shulenburg advised plaintiff that he, Mr. Shulenburg, would return to Albuquerque and the check for $150.00 would be forthcoming in about a week. Plaintiff received the check in about a week. He endorsed and deposited this check in his bank account on June 21. On the back of the check appeared the following release:

> "This draft must be endorsed by all payees and exactly as drawn.

> "This draft constitutes settlement in full of the claim described on the face hereof and the payee(s) by endorsement below accepts it as such."

However, he is not sure that he read this release at the time he affixed his endorsement immediately below the same.

On June 22 he developed a severe headache and the soreness in his neck was worse. He also felt some paralysis of his right leg and arm, and had a little difficulty with his speech. He called a chiropractor about securing relief from the pain in his neck. The chiropractor x-rayed his neck and reported to him that he had sustained a "compression injury." He was given a heat treatment to his neck and then went on to work that day. Later in the afternoon he developed a "bad headache" and went home.

On the morning of June 23 his arm and leg were much worse, but he again went to work. He worked only a while during the morning and then went home. Thereupon he called the doctor who had first examined and treated him on June 3 and 4. The doctor was ill, but on the following morning, June 24, the doctor took x-rays of his head. On the next morning, June 25, he was having still further difficulty with his arm and leg and with his speech. The doctor on this date gave him a thorough examination and advised him that he had "bleeding on the brain." The doctor made an appointment for plaintiff with a neurosurgeon at El Paso, Texas for Monday, June 27.

Plaintiff went to El Paso, was examined by the neurosurgeon, and was advised he had a subdural hematoma. He was immediately placed in a hospital and underwent surgery the following morning for the removal of the hematoma. He was hospitalized until July 7.

He lost six weeks full time and about two weeks part time from his employment as a result of the accident, for a total loss of salary of about $1,500.00. His medical and related bills also totaled approximately $1,500.00.

He testified that he absolutely would not have signed the release had he known on June 9 that he "had a serious brain injury."

Mr. Shulenburg, who was called as a witness by plaintiff, testified that at the time he obtained the release he did not know that plaintiff then had a subdural hematoma, and that had he known this he would not have tried to settle for $150.00.

Plaintiff asserts two points relied upon for reversal. The first of these points relates only to the weight to be given the evidence and the inferences deducible therefrom, before a trial court is justified in directing a verdict for defendant at the close of plaintiff's case. He cites the case of Jones v. New Mexico School of Mines,

75 N.M. 326, 404 P.2d 289 (1965), wherein it was stated:

"We have stated many times that it is error for the court to direct a verdict in favor of a defendant at the close of plaintiff's case unless plaintiff has presented no facts which would support a judgment in his favor. Edwards v. Ross, 72 N.M. 38, 380 P.2d 188. When considering the motion, the court must look at the evidence in a light most favorable to plaintiff and must indulge every inference therein in support of plaintiff, disregarding all unfavorable considerations. Gibson v. Helms, 72 N.M. 152, 381 P.2d 429; Hutchison v. Boney, 72 N.M. 194, 382 P.2d 525. If reasonable minds may differ as to the conclusion to be reached under the evidence or permissible inferences to be drawn therefrom, the question is one for the jury and it is error to direct a verdict. Bell v. Ware, 69 N.M. 308, 366 P.2d 706."

 We recognize the quoted rule recited in the Jones case; are certain that the trial court recognized and was fully aware of this rule; and are of the opinion that he properly applied the rule to the evidence at the time he considered and sustained the motion for a directed verdict.

The second and principal point relied upon for reversal is that:

"A RELEASE GIVEN BY ACCIDENT VICTIM MAY BE SET ASIDE IF IT IS EXECUTED BY MUTUAL MISTAKE AS TO THE NATURE AND EXTENT OF THE INJURIES, REGARDLESS OF THE LANGUAGE CONTAINED IN THE RELEASE."

Plaintiff has cited numerous cases from several jurisdictions which he urges supports his position. Defendant has cited numerous cases from several jurisdictions which he urges supports his position that a release, like the one here involved and given under circumstances like those here present, is to be given validity and constitutes a bar to plaintiff's suit for damages arising as a result of injuries and the subsequent consequences thereof, even though the nature and extent of the injuries and the consequences were unknown to the parties at the time of settlement and execution of the release. There is no doubt the cases cited by the parties, at least in most instances, lend support to their respective views. Most of these cases cited by both parties are referred to in the lengthy annotation appearing at 71 A.L.R. 2d 82.

We shall not endeavor to distinguish the many cases from or reconcile them with the present case and with what we conceive to be the law in New Mexico, nor shall we endeavor to distinguish between or reconcile them with each other. Many of them appear to us to be neither distinguishable nor reconcilable on any generally accepted legal or equitable principle.

Many of the cases are supposedly predicated upon the theory of mutual mistake, which is the theory upon which plaintiff here seeks to avoid the effects of his settlement and release. As stated in 5 Williston, Contracts, 4347–48 (Rev'd. ed. 1937):

"* * * where a release is given by one injured in an accident and more serious injuries develop than were supposed to exist at the time of the settlement, it is a question of fact whether the parties assumed as a basis of the release the known injuries, or whether the intent was to make a compromise for whatever injuries from the accident might exist whether known or not. On a fair interpretation not only of the language of the instrument, but of the intention of the parties, the latter supposition is more likely, but presumably out of tenderness for injured plaintiffs some courts have gone very far in finding the facts in accordance with the former possibility. * * *"

Many of the cases recognize that the basis for granting relief to the releasor in these situations is not one of mutual mistake, but relief is granted on some other theory.

In many, if not in most, of the cases which have set aside a written release, regardless of how broad and inclusive the language of the release, it is recognized that if the parties intended that claims for all injuries, whether known or unknown at the time of execution of the release, were being settled and released, then the release should be enforced. Larson v. Sventek, 211 Minn. 385, 388, 1 N.W.2d 608, 610 (1941); Aronovitch v. Levy, 238 Minn. 237, 246, 56 N.W.2d 570, 576 (1953), 34 A.L.R.2d 1306; Doyle v. Teasdale, 263 Wis. 328, 346, 57 N.W.2d 381, 389–390 (1953); Denton v. Utley, 350 Mich. 332, 344–345, 86 N.W.2d 537, 542–543 (1957); Sloan v. Standard Oil Co., 177 Ohio St. 149, 152, 203 N.E.2d 237, 239–240 (1964). The Denton and Sloan cases are two of those most heavily relied upon by plaintiff. We point out that in the Denton case the majority of the court concurred only in the result. In the Sloan case the negotiations, which preceded the settlement and execution of the release for the exact amount of the property damage, did not embrace the question of personal injuries.

We are of the opinion that the language of the release here involved, together with the testimony of the plaintiff himself, that he read and understood the release to mean just what was stated therein, can lead only to the conclusion that the parties understood and intended that they were effecting settlement for all claims of the plaintiff arising out of the accident, including all claims on account of personal injury, both known and unknown. The fact that the plaintiff and the adjuster were both unaware of the developing hematoma, and the fact that they would not have settled for $150.00 had they known the same, cannot be said to change the clear meaning of the language of the release, or the clear understanding and intent of plaintiff at the time he settled and executed the release. It takes little reflection on the part of most of us to recall instances wherein our acts, entered into and consummated in accordance with our clear purpose and without any equivocation of our intent at the time, when viewed in the light of subsequent developments, appear to have been mistakes. However, the law does not and cannot operate in retrospect to relieve a party from his contractual obligations, deliberately and intentionally assumed, because of the subsequent development of unfortunate and unforeseen results.

A contract or settlement, which equity will reform or rescind because of a mutual mistake, must fail to express the agreement actually entered into, or fail to express what was really intended by the parties. Cleveland v. Bateman, 21 N.M. 675, 158 P. 648 (1916); Morris v. Merchant, 77 N.M. 411, 423 P.2d 606 (1967); Restatement, Contracts, §§ 502 & 504 (1932). Here the instrument expressed what the parties intended, and particularly what plaintiff intended and what he understood the agreement to mean.

As above stated, the many cases from different jurisdictions are not reconcilable on principle, nor can their results be reconciled on the basis of their facts. However, we have two cases decided by the New Mexico Supreme Court, which we believe compel the result reached by the trial court. Moruzzi v. Federal Life & Cas. Co., 42 N.M. 35, 75 P.2d 320, 115 A.L.R. 407 (1938); Mendenhall v. Vandeventer, 61 N.M. 277, 299 P.2d 457 (1956); see also Tocci v. Albuquerque & Cerrillos Coal Co., 45 N.M. 133, 112 P.2d 515 (1941); Woods v. City of Hobbs, 75 N.M. 588, 408 P.2d 508 (1965).

In the Moruzzi case settlement was effected by correspondence for $23.33 for disability occasioned by injury when some boards from a scaffold fell and struck the insured's head. He was disabled for a period of about fourteen days, and immediately after the termination of his period of disability he returned to work at his regular employment. He continued to work for approximately a month. Then he was taken suddenly ill and died the following morning as a direct and proximate result of the injury he had sustained.

The language of the receipt and release there involved, and which appeared on the check, which the insured endorsed and negotiated, was as follows. On the face of the check there appeared:

"Pay to the order of John Batista Mourzzi [sic]
$23.33

Insured

G. I. C. 313 $23 & 33 cts. Dollars,

"Being in full and final compromise settlement of all claims against this company under its policy No. 454894 for any accidental injury or illness, or its or their effects, originating prior to date hereof.

"Federal Life and Casualty Company

"J. A. Kennedy, Treasurer."

On the reverse side of the check, and immediately above decedent's signature there appeared:

"Received of the Federal Life and Casualty Company the amount named on face hereof in full payment and compromise settlement, release and discharge, of any and all claims made or to be made as herein stated, and all liability of the company by reason of such injury or sickness or its or their effects are hereby fully satisfied and discharged."

In sustaining the validity of the release and in rejecting the attacks thereon, one of which was mistake, the court stated in part as follows:

"* * * Though the amount paid Moruzzi appears ridiculously small, considering the maximum liability under the terms of the insurance policy, yet it is not the province of this court to make the contract for the parties, or guide them in their business affairs. * * *

"* * * Moruzzi knew that he had been injured. He did not know that the future effects and results of the injury would be death. The effects of the injury might have been temporary total disability or permanent total disability. * * * Both parties to the contract settled for all time their rights and obligations in respect of the injury which had already occurred, although neither party could foresee with certainty what the future effects might be.

"It is the theory of the appellee that because Moruzzi did not knew he was going to die as a result of the injury, therefore the release which he executed is void or voidable for mistake. Moruzzi may or may not have foreseen death. Unforeseeability, however, is not a 'mistake' in the legal sense."

In his argument before us plaintiff sought to distinguish the Moruzzi case from the present case on the grounds that in Moruzzi the negotiations were limited and were conducted by correspondence, whereas in the present case the settlement negotiations were conducted in a face to face encounter and discussion between the plaintiff and the adjuster. However, in Sloan v. Standard Oil Co., supra, the Ohio court, in reciting certain factors which have been judicially recognized as aids in determining the intent of the parties, stated that one of these factors, to be considered favorably to the party seeking rescission or cancellation, is "[t]he absence of bargaining and negotiating leading to settlement." In this light, the absence of bargaining and negotiating in the Moruzzi case should have been a consideration in arriving at a result opposite to that reached, and the fact of bargaining and negotiating in the present case should be a consideration in support of the result reached by the trial court.

In Mendenhall v. Vandeventer, supra, recovery by plaintiff from a comminuted fracture of the right ulna was not as

anticipated at the time of settlement and execution by her of a release. From a judgment, entered pursuant to a directed verdict for defendant on a separate trial upon the issue of the validity of the release, she appealed. The Supreme Court quoted at length with approval from Moruzzi v. Federal Life & Cas. Co., supra, and also stated in part:

> "So far as releases from personal injury claims are concerned, it is generally held that 'where the parties are regarded as having contracted with reference to future possibilities, and there is no fraud or other inequitable conduct by the release [releasee],' a release 'cannot be avoided on the ground of mistake merely because the injuries prove more serious than the releasor at the time of executing the release believed them to be.' Pom.Eq. Jur., 5th Ed., § 871d. See also Annotation in 48 A.L.R. at page 1464. * * *"

The release in that case, just as in the present case, sought to end, once and for all, any contention between the parties as to compensation for personal injuries, property damage and possible litigation. It was a compromise and settlement of all claims against the defendant growing out of the accident.

Finding no error, the judgment is affirmed.

It is so ordered.

SPIESS, J., concurs.

HENSLEY, Jr. (dissenting).

At the close of the plaintiff's case the trial court in the presence of the jury announced that it would entertain a motion for a directed verdict. The defendant's motion for a directed verdict was then made and sustained over the objection of the plaintiff. The majority opinion summarily approves the directed verdict and accurately quotes from Jones v. New Mexico School of Mines, 75 N.M. 326, 404 P.2d 289. The majority cite Larson v. Sventek, Aronovitch v. Levy, Doyle v. Teasdale, Denton v. Utley, and Sloan v. Standard Oil Company. Without exception these cases state that when a release is attacked for fraud or mutual mistake of fact that the intent of the parties is a question of fact. See also Williston, Contracts, Rev. ed. § 1551; 76 C.J.S. Release § 72, page 722; Ranta v. Rake, 91 Idaho 376, 421 P.2d 747 (1966). In short, the question becomes one of intent of the parties at the time of the execution of the release and the issue is to be resolved by the trier of the facts. Here the plaintiff unequivocally stated that he did not know that he had sustained a brain injury when he signed the release. The witness, Shulenburg, testified that he would not have tried to settle for $150.00 had he known of the plaintiff's subdural hematoma. Applying the test summarized in Jones v. New Mexico School of Mines, supra, the error in directing a verdict in favor of the defendant at the close of the plaintiff's case becomes sufficiently apparent to the writer to require this dissent.