JOHN S. CAVENDER ET AL., Respondents, *v.* WILLIAM WADDINGHAM, Appellant.

### April 2, 1878.

1. One employed brokers to purchase of certain persons certain real estate, within a certain time, and at a fixed sum, the brokers to receive as commissions a certain percentage, to be deducted from the purchase-money; the brokers effected the purchase according to instructions, and obtained from the persons named a warranty deed to their principal, which he rejected on the plea that the whole thing was a joke. *Held*, in an action by the brokers against their principal for damages for the loss of commissions caused by such refusal to accept the deed and carry out the contract, that it was not error to refuse to go into the question of the vendor's title and right to convey, or of the actual value of the property. Where the defence to the action is want of mental capacity to contract, testimony as to the actual value of the property is competent only when offered to show that the price offered was so exorbitant as to be inconsistent with good faith on the part of the brokers.

2. Though the written agreement to sell, obtained from the vendor by the broker, in accordance with instructions, might have been insufficient in an action for specific performance, this is no defence to an action by the broker for his commissions, where the agreement substantially complied with the instructions given the broker, was fully carried out by the vendor, and effected its purpose.

3. Where the acceptance of an offer to purchase real estate provides that the vendor shall have a reasonable time in which to vacate the premises, this is not a modification of the proposition, or a counter-proposition, but is an unconditional acceptance of the offer as made.

4. Mere excitement from the use of intoxicating liquors is not such drunkenness as will enable a party to avoid his contracts; such excitement and drunkenness must be excessive and absolute, so as to suspend the reason and create impotence of mind at the time of entering into the contract. Absolute drunkenness does not mean complete insensibility, and the use of this phrase in an instruction does not render it objectionable.

APPEAL from St. Louis Circuit Court.

*Affirmed.*

GEORGE P. STRONG, for appellant: Want of title or authority to convey is a good defence to this action. — *Luckett* v. *Williamson*, 31 Mo. 57; 1 Sugden on Vend. 125, note *x; Id.* 400, note *q; Steinhauer* v. *Whitman*, 1 Serg. & R. 438; *Roland v. Miller*, 3 Watts & S. 390; *Herrod* v. *Blackburn*, 56 Pa. St. 103; *Pyrke* v. *Waddingham*, 17 Eng. Law & Eq. 538, 541; 3 Pars. on Con. (6th ed.) 378, 380. An instruction that, to avoid a contract on the ground of drunkenness, the drunkenness must be excessive and absolute, is bad. — *Thomas* v. *Bobb*, 45 Mo. 388; *Barrett* v. *Buxton*, 2 Aik. 171; *Foot* v. *Tewksbury*, 2 Vt. 100; *Pitt* v. *Smith*, 3 Camp. 33. The acceptance of an offer must be wholly unconditional. — *Jenness* v. *Iron Co.*, 53 Mo. 20; *Eads* v. *Carondelet*, 42 Mo. 113; *Bruner* v. *Wheaton*, 46 Mo. 363; *Eliason* v. *Henshaw*, 4 Wheat. 228; *Oriental In. Steam Co.* v. *Briggs*, 4 De G. F. & J. 191; *Potts* v. *Whitehead*, 20 N. J. 55; *Honeyman* v. *Marryatt*, 21 Beav. 14; *Woods Case* v. *Jones*, 3 De G. 85. The agreement of sale being indefinite as to the description of the land, uncertain, and ambiguous, was insufficient. — Gen. Stat. 1865, p. 438, sec. 5; Brown on Stat. Fr. 396; *Advent* v. *Farrow*, 7 Rich. Eq. 383; *Lindsay* v. *Lynch*, 2 Sch. & Lef. 7; *Kay* v. *Curd*, 6 B. Mon. 101; *Hurly* v. *Bearon*, 98 Mass. 545.

ARBA N. CRANE, for respondents: Avoidance of contract on the ground of drunkenness. — 1 Story on Con., sec. 87; 1 Story's Eq. Jur., sec. 231; *Caulkins* v. *Fry*, 35 Conn. 170; *Belcher* v. *Belcher*, 10 Yerg. 121. A broker is entitled to his commissions when prevented from a complete performance by the act or neglect of his principal. — Story on Ag. (8th ed.), sec. 329, note 4; *Bailey* v. *Chapman*, 41 Mo. 536; *Cavender* v. *Waddingham*, 2 Mo. App. 551. It was not error to refuse, in this action, to go into the question of the value of the real estate. — *Cadwallader* v. *West*, 48 Mo. 494; *Eyre* v. *Potter*, 15 How. 59.

BAKEWELL, J. delivered the opinion of the court.

This action is by real-estate brokers against their principal, for damages caused by his act depriving them of their commissions earned whilst in his employment. The allegations of the petition are, that plaintiffs are copartners as real-estate brokers; that, on Feb. 28, 1874, defendant employed them to purchase for him, from John A. and W. H. Scudder, trustees of Henry Ames, a lot in blocks 23 and 24 of St. Louis, fronting $183\frac{5}{12}$ feet on Main Street by $142\frac{3}{12}$ deep, on which is situated the Ames pork-house; that defendant instructed plaintiffs to effect a purchase of this property within ten days, at the rate of $600 per front foot; that it was agreed between plaintiffs and defendant that the commission should be two and a half per cent on the purchase-money; that this should be paid by the Scudders, and was to be divided by the plaintiffs and defendant, defendant to be allowed one-fifth of the commissions; that, on March 2, plaintiffs effected their purchase according to their instructions, and the Scudders executed and delivered to plaintiffs, at that date, a warranty deed to defendant for the property named, and authorized plaintiffs to deliver the deed to defendant, to receive the purchase-money, and deduct from it their commission of two and a-half per cent; that plaintiffs offered the deed to defendant on March 9, but he refused to comply with the purchase, accept the deed, or pay the purchase-money, whereby plaintiffs lost their commissions, and were damaged $4,000, for which they ask judgment.

The answer denies generally the material allegations of the petition, and sets up as matter of affirmative defence that the Scudders had no title, and no power to sell or to deliver possession of the property; and that defendant, at the time of the alleged contract, had not mental capacity to contract, and that plaintiffs knew the fact at the time.

On the trial, plaintiffs offered evidence tending to prove the allegations of the petition. Evidence was introduced

by defendant, tending to show that, at the time of the alleged contract, he was on a protracted "spree;" also tending to show that, at the time of the alleged contract, he was insane from the effect of liquor, and did not know what he was about. The evidence for plaintiffs tended to show that defendant was sober enough when he made the agreement sued on, and was capable of making the contract. Defendant offered to show that the Scudders had no title to the property mentioned in their deed; and that it was worth much less than $600 per foot. This testimony was excluded by the court. There was a verdict and judgment for $2,201; from which defendant appeals.

It is contended by appellant that the court erred in rejecting the offer of defendant to show that, at the date of their agreement to sell, and of the deed executed by them, the Scudders had no title, and no power to convey the property in question. It is claimed that the gist of this action is the damage occasioned to plaintiffs by the wrongful act of defendant in refusing to accept the Scudder deed and to pay the purchase-money according to agreement; that, if the Scudders had not title, the defendant was not bound to accept their deed, and therefore committed no wrong and did no damage to plaintiffs of which they can complain. We do not think that the court was bound to go into the question of title. There is no dispute that the Scudders were in possession, claiming, as trustees under the will of Henry Ames, the power to give a perfect title. They executed a deed, with covenants of warranty, and the testimony is that they were ready to comply with their agreement, and to give possession within twenty-four hours. Defendant did not employ plaintiffs to ascertain in whom the legal title was vested, and to obtain from the real owners, whoever they might turn out to be, a perfect title. Such an employment they might perhaps have refused. He professed to know who were the persons having the right to convey. He stated to plaintiffs that he had a purchaser

for the property at $700 a foot; that he did not believe the Scudders could be got to sell and deliver possession within ten days; that he was not on speaking terms with the Scudders; that if they would obtain from the Scudders an agreement in writing to convey on the terms named, they should have four-fifths of the commission on the sale, to be deducted from the purchase-money. With these terms the plaintiffs appear to have sufficiently complied in good faith. The Scudders were at first unwilling to sell, owing to the very heavy injury which must result to the business of pork-packing carried on on the premises, and to the fact that they would have to pay heavily to induce a person who had possession of a portion of the premises under them to leave. When the plaintiffs, after considerable persuasion and many interviews with the Scudders, had overcome these difficulties, and fully effected the purpose of defendant, as declared to them, defendant refused to comply with the agreement into which he had directed plaintiffs to enter in his name. He did not pretend then that there was any defect in the title, or that any thing further remained to be done to carry out fully his wishes in the matter; but he refused to accept the deed on the ground that the whole matter was a joke; that he had never employed the plaintiffs at all, and that he would not have the property. The pretext that the Scudders had no right to convey is manifestly an afterthought. The uncontradicted testimony is, that the plaintiffs did all that they were required to do; and if there was a defect in the title, they had no means of knowing it, and no opportunity of setting it right. They had a right to suppose, when Waddingham employed them to purchase certain property from certain persons, and to get from those persons at once a written contract to sell, that he knew what he was about, and was willing to take such title as those persons could convey.

2. It is insisted that the trial court erred in refusing to admit testimony as to the actual value of the property in

question at the time of the sale. That the price offered by Waddingham was a high one, sufficiently appears. Plaintiffs stated to him, when he named his terms, that they thought the property could be purchased for a less sum, but he insisted that it was important to conclude the trade at once, and that he doubted whether the Scudders would sell and deliver possession even at the terms named, and that he had a purchaser at a price which would yield him a handsome profit. The only object of testimony as to the price must have been to show that the bargain was so unreasonable that it could not have been made by a man in his right mind. There is no pretence of fraud or undue influence on the part of the plaintiffs; that they advised the purchase, or were endeavoring to impose upon the mental weakness of a man of infirm mind and ignorant of affairs. On the contrary, the evidence is that Waddingham was a keen, shrewd business man, well acquainted with the value of real estate, owning property in the immediate vicinity of the lots in question, and better acquainted with its value than were either of the plaintiffs. That the price offered for this land was an extravagant one, would not tend to show that defendant did not have capacity to contract. The alleged temporary insanity of defendant was a good defence, if proved; and if an offer had been made to show that the price offered for this land was so exorbitant as to make it impossible that any real-estate agent dealing with one who made such an offer could regard him as acting seriously, or as being sane, it should not, perhaps, have been excluded. But the fact that defendant offered for the property more than its market value was wholly immaterial, and its introduction could have served only to confuse the case.

3. It is contended that there is no evidence to show that Waddingham directed plaintiffs to purchase any particular piece of ground, or that they obtained a deed for any ground which he had directed them to purchase. The description in the offer made in writing by plaintiffs to the

Scudders, by the direction of defendant, is said to be too vague. The offer was "six hundred dollars per front foot for the lot of land on Main Street, in city blocks 23 and 24, now occupied as a pork-house, and having a front on Main Street of $183\frac{5}{12}$ feet by a depth of $142\frac{3}{12}$ feet." The testimony is, that the property described in the deed of the Scudders is the precise property pointed out by Waddingham, at the time he employed plaintiffs, upon a plat of city blocks 23 and 24, shown to him for that purpose; that it is what was formerly known and used as the Ames pork-house property; that the property north of it belongs to the Mullanphys, and the property south of it to Mrs. Marmaduke; and that it is $185\frac{5}{12}$ feet on Main Street by $142\frac{3}{12}$ feet deep, in blocks 23 and 24; that a portion of the property is covered by a warehouse, formerly used to store pork, but now used as a general warehouse, and called the "Hyde warehouse," and that the rest of the property is used as a pork-house; that the Hyde warehouse has not been used in connection with the pork-house for many years, but that now, as then, it forms a portion of the pork-house property; and that the whole piece conveyed is always known as the "Ames pork-house property." We think that this is quite enough. Whether or not Waddingham could have maintained an action for specific performance on the written agreement to convey, is aside from the question. The Scudders conveyed the identical property which Waddingham desired to buy. The memorandum in writing which plaintiffs were to obtain was sufficient, for it held them, and effected its purpose. If there was an ambiguity in it, it was an ambiguity of which the Scudders sought to take no advantage, and of which defendant cannot complain, as he was in no way injured by it. There is no question as to what property Waddingham desired to buy, or that it is sufficiently described in the Scudder deed. If it was insufficiently described in the written memorandum signed by the Scudders and plaintiffs, and it could be

shown that by reason of this defect defendant lost a customer for the property, or was in any way injured, and for that reason refused to take a deed when tendered, this would be matter of defence; but the insufficiency of the memorandum in this case is not of such a character as to destroy the right of plaintiffs to recover. The whole testimony shows a substantial compliance on their part with all that was essential to their contract with defendant, and such as to entitle them to a recovery, so far as that matter is concerned.

4. It is contended that plaintiffs did not comply with their contract, because they failed to obtain from the Scudders an unconditional acceptance of the offer, in writing, to purchase. The testimony is, that on February 28 the plaintiffs were employed, and that defendant insisted upon it as essential that the transaction should be completed in two days. The acceptance of the offer was dated March 2, and is in these words : "We accept the above offer, and authorize you to close the trade with Mr. Waddingham on terms stated, giving the present occupants reasonable time to vacate the premises." We think this was an unconditional acceptance of the offer as made, without any modification of its terms. 46 Mo. 363. It was no counterproposition, but an acceptance of the same thing in the same sense. Mr. Scudder swears, too, that he at once made arrangements with occupants of part of the premises, and could and would have delivered possession in twenty-four hours, or on the date of the deed, which was March 9. The occupants were entitled to a reasonable time to vacate the premises, whether the Scudders said so or no.

These considerations dispose of all exceptions taken by defendant to the action of the trial court in admitting or rejecting evidence, and in refusing instructions.

It is not necessary to set out the instructions given. They fairly presented to the jury the law applicable to the facts of the case as detailed in the evidence; nor is any serious

objection made to any instruction given, with the exception of a declaration, at the instance of plaintiffs, that "mere excitement from the use of intoxicating liquors is not such drunkenness as will enable a party to avoid his contracts; such excitement and drunkenness must be excessive and absolute, so as to suspend the reason and create impotence of mind at the time of entering into the contract."

It is objected that absolute drunkenness must mean complete insensibility, and that this instruction was misleading. A man may, however, be absolutely drunk without being dead drunk; and we see no objection to the instruction, which seems to us to be a correct, reasonable, and intelligible direction to the jury. 1 Story on Con., sec. 87; 1 Story's Eq., sec. 231; 35 Conn. 170; 10 Yerg. 121.

There was evidence to support the verdict, and from which the jury might very well find that defendant was quite sober, and in complete possession of all his faculties, when he made the contract in suit. Our attention is not called to any error of the trial court which warrants a reversal of the judgment, and, with the concurrence of all the judges, it is affirmed.