SOUTH BRANCH CHEESE CO. *v.* AMERICAN BUTTER & CHEESE CO.

1. SALES—CONTRACTS—OFFER AND ACCEPTANCE.
   Correspondence between plaintiff and defendant in relation to a shipment of cheese, showing, after preliminary negotiations, an offer of 200 boxes at 13½ cents, a response from defendant to try 50 boxes and, if satisfactory, to purchase more, and telegram and letter stating that the fifty-box shipment was satisfactory, and plaintiff's offer accepted for 200 boxes at the price stated, *held*, to constitute an offer and acceptance and create a binding contract.

2. SAME—MAIL—LETTERS.
   An offer made by mail on Friday of one week received the following day, when the buyer acknowledged receipt and replied that it would accept as soon as the sample shipment arrived, which in fact did arrive on Monday thereafter, when defendant forwarded an unconditional acceptance by wire, was sufficiently prompt to effect a sale, and was an acceptance of the continuing offer, that contained no express limit as to time.

Error to Wayne; Codd, J. Submitted April 12, 1916. (Docket No. 7.)  Decided June 1, 1916.

Assumpsit on the common counts in justice's court by the South Branch Cheese Company, a corporation, against the American Butter & Cheese Company, a corporation. From a judgment for plaintiff, defendant appealed to the circuit court. Judgment for plaintiff on a verdict directed by the court. Defendant brings error. Reversed.

*Beaumont, Smith & Harris,* for appellant.

*Andrew C. Paterson* (*William C. Stuart,* of counsel), for appellee.

The controversy between the parties to this suit arose out of the following correspondence:

"BRANT, MICH., Aug. 27, 1912.
"AMERICAN BUTTER & CHEESE CO.,
"Detroit.
"*Gentlemen:*
"We received a letter from you some time ago wishing us to state the amount of cheese we were making, also if we would have some, and also asking our price. We have some Michigan flats, soft cheese, which we offer for sale, have just some today for 15 f. o. b. cars Chesaning. If you are in the market for cheese, we wish to hear from you.
"SOUTH BRANCH CHEESE CO.,
"Brant, Mich."

"DETROIT, MICH., Aug. 29, 1912.
"SOUTH BRANCH CHEESE CO.,
"Brant, Michigan.
"*Gentlemen:*
"Your letter of the 27th inst. received, and in reply would say that we are not interested in cheese at 15c unless the quality was extra fancy. Not knowing your cheese, we would hesitate to order any large quantity, but would like to have you make us a shipment of ten or fifteen boxes so that we can see what it is like. If it proves to be fancy cheese, we can probably do more business with you. Let us know when you will make this sample shipment, and oblige,
"Yours truly,
"AMERICAN BUTTER & CHEESE CO.,
"KGS/T      Per"

"BRANT, MICH., Sept. 5, 1912.
"THE AMERICAN BUTTER & CHEESE CO.
"*Gentlemen:*
"We received your letter of the Aug. 29, and will say we will ship you ten boxes of cheese for a sample and trust that you will do the best you can by them. Will make shipment about Sept. 6, 1912.
"Yours truly,
"SOUTH BRANCH CHEESE CO.,
"Brant, Mich.
"CHARLES RICH, Sec."

"BRANT, MICH., Sept. 6, 1912.
"AMERICAN BUTTER & CHEESE CO.,
"*Gentlemen:*
"We are today shipping you 15 boxes of cheese in place of the 10 boxes which I have written you we would send. I have invoiced the cheese at 14c and I will expect you to do the best you can. If the cheese are satisfactory please let us know. We have some more that are ready to ship at any time.
"Yours,
"SOUTH BRANCH CHEESE CO.,
"Brant, Mich."

"DETROIT, MICHIGAN, September 9, 1912.
"SOUTH BRANCH CHEESE CO.,
"Brant, Michigan.
"*Gentlemen:*
"Your letter and invoice for fifteen boxes received. As soon as the cheese arrive, we will examine them and if O. K. we will be glad to do more business with you.                        Yours truly,
"AMERICAN BUTTER & CHEESE CO.,
"KGS/T        Per"

"DETROIT, MICHIGAN, September 17, 1912.
"SOUTH BRANCH CHEESE CO.,
"Brant, Mich.
"*Gentlemen:*
"Your shipment of 15 boxes received, and we regret to say that it is not at all fancy cheese. It is full of small pin holes and has a very sharp taste. We like a nice waxy body, perfectly mild clean flavor. Have you anything better to offer?
"Yours truly,
"AMERICAN BUTTER & CHEESE CO..
"KGS/T        Per"

"SOUTH BRANCH CHEESE CO.,
"BRANT, MICH., Sept. 23, 1912.
"AMERICAN BUTTER & CHEESE CO.,
"*Mr. Karl G. Sakewitz:*
"Was sorry to hear that those 15 boxes of cheese was not all fancy cheese for you, but the cause of the sharp taste was because they were cured too long in the hot weather, but will make you a better shipment

of 25 or 50 at 13½c if you say so. I consider this cheese at the very same as the Frankenmuth cheese because I made their for two years, and I remember we gave you quite a few shipments. Kindly let me hear soon.                     Yours truly,
                          "Max Rogner, Salesman.
    "Charley Rich, Sec."

                "Detroit, Michigan, September 24, 1912.
"South Branch Cheese Co.,
    "Brant, Michigan.
"*Gentlemen:*
    "Your letter of the 23d inst. received, and note what you say about the hot weather being responsible for the poor quality of your sample lot, and also that you are now in position to ship us 25 or 50 boxes that will be fancy. Please ship us 50 boxes at once at the price quoted, and if they are fancy quality cheese, we hope to do further business with you, but, if they are like the last lot, we will not be able to use them. Since you have had experience with the Frankenmuth cheese factories, you know what a fancy quality cheese is like and would be much pleased to see you successful in making as good cheese as they do. Make prompt shipment of the above lot, and oblige.
                     "Yours truly,
                "American Butter & Cheese Co.,
    "KGS/T      Per"

                "Detroit, Michigan, October 2, 1912.
"South Branch Cheese Co.,
    "Brant, Michigan.
"*Gentlemen:*
    "We have your invoice for 50 boxes cheese shipped us October 1st. We sincerely trust that these will show up fancy mild cheese, good body and clean flavor. If they are, we will at once be in the market for more, and wish, therefore, that you would let us know by return mail how many more you have ready for shipment and your lowest price, and oblige.
                     "Yours truly,
                "American Butter & Cheese Co.,
    "KGS/T      Per"

"BRANT, MICH., Oct. 4, 1912.
"AMERICAN BUTTER & CHEESE CO.,
"*Gentlemen:*
"Your letter of the 2d rec'd., and will say we have 200 cheese ready for shipment at any time and will take 13½ cents f. o. b. Depot at Chesaning, Mich.
"Yours resp.,
"SOUTH BRANCH CHEESE CO.,
"Brant, Mich.
"CHARLES RICH, Sec."

"DETROIT, MICHIGAN, October 5, 1912.
"SOUTH BRANCH CHEESE CO.,
"Brant, Michigan.
"*Gentlemen:*
"Your letter of the 4th inst. received, and note your offer. We will reply to same just as soon as the 50-box shipment arrives and we can examine the quality. This shipment is due and ought to be in most any day.
"Yours truly,
"AMERICAN BUTTER & CHEESE CO.,
"KGS/T        Per"
"[Written in ink:]
"Shipment is at depot now and we will get it Monday."

"WESTERN UNION TELEGRAPH COMPANY.
"DETROIT, 10/7/1912.
"To SOUTH BRANCH CHEESE CO.,
"Brant, Mich.:
"Fifty-box lot received and satisfactory. Accept your offer two hundred boxes same quality and price. Ship at once.
"AMERICAN BUTTER & CHEESE CO.,
"Paid."

"DETROIT, MICHIGAN, October 7th, 1912.
"SOUTH BRANCH CHEESE CO.,
"Brant, Michigan.
"*Gentlemen:*
"Your 50-box lot received this morning, and we examined same and found them all right. We therefore wired you as follows:
"'Fifty-box lot received and satisfactory. Accept

your offer two hundred boxes same quality and price. Ship at once'—which we hereby confirm.

"Yours truly,
"American Butter & Cheese Co.,
"KGS/T          Per"

"Detroit, Michigan, October 14, 1912.
"South Branch Cheese Co.,
"Brant Michigan.
*"Gentlemen:*

"Since accepting your order a week ago today we have not received invoice or B/L from you for the shipment of Cheese.  If you shipped it last week, please send us the Invoice and B/L.  If not yet shipped, please let us know by return mail when you will ship it, and oblige.

"Yours truly,
"American Butter & Cheese Co.,
"KGS/T          Per"

"Detroit, Michigan, October 17, 1912.
"South Branch Cheese Co.,
"Brant, Michigan.
*"Gentlemen:*

"Not hearing from you regarding that 200-box lot we called you by phone today and were surprised to learn that you were not going to ship us.  You knocked a hole in our calculations because if we had not bought this 200-box lot from you we would have bought it elsewhere.  We are now at once obliged to buy 200 boxes Michigan thirty lb. Flats to replace these, and, as the market has been advancing, it is doubtful if we can now replace them for less than 16½c to 17c.  At any rate, we are sending out inquiries today to replace this lot and whatever it costs us above the price that you sold us the 200 boxes for, we will have to charge to your account.  We will therefore withhold remittance for the 50-box lot until we can determine how much extra these cheese are going to cost us.

"Yours truly,
"American Butter & Cheese Co.,
"KGS/T          Per"

"DETROIT, MICH., Nov. 7, 1912.
"SOUTH BRANCH CHEESE CO.,
"Brant, Michigan.
"*Gentlemen:*
"We inclose herewith a statement showing from whom we bought the two hundred boxes of cheese to replace the purchase we made from you which you declined to ship. We sent out inquiries immediately upon receiving notice from you that you would not ship the cheese and bought them as cheaply as possible. The statement shows quantities and prices, also extra cost amounting to $188.85. This amount we deduct from your invoice of October 1st, and inclose check to balance $22.05.

"Yours truly,
"AMERICAN BUTTER & CHEESE CO.,
"KGS/T     Per"

The defendant had paid for the 15-box sample order, but refused to pay for the 50 boxes constituting the second shipment until it had determined how much it would cost to purchase 200 boxes in the open market to take the place of the 200-box shipment which had been refused by the plaintiff. The oral evidence in the case offered by the parties has no important bearing upon the question involved. Only $22.05 having been paid to the plaintiff on account of the purchase of the 50 boxes, suit was brought for the balance, amounting to $195.43. Defendant filed a claim of set-off and recoupment by reason of the failure of the plaintiff to ship the 200 boxes, for which it alleged it had a valid contract. A verdict was directed in favor of plaintiff for the amount claimed by the learned circuit judge, he being of the opinion that the correspondence with reference to the purchase and sale of the 200 boxes did not constitute a valid contract, and therefore that the claim of the defendant for set-off and recoupment was not valid. Defendant now reviews the case in this court.

BROOKE, J. (*after stating the facts*). But two questions are involved:

(1) Was there a valid offer on the part of the plaintiff to sell to the defendant 200 boxes of cheese?

(2) Was there a valid acceptance of that offer by the defendant?

We have no hesitation in holding that the letter of October 4, 1912, is a distinct offer on the part of the plaintiff to sell the defendant 200 boxes of cheese at 13½ cents per pound, f. o. b. Chesaning, Mich. The letter was written in response to an inquiry of date October 2, 1912, and as a result of two previous transactions between the same parties, one for 15 boxes, and one for 50 boxes. It was an offer which upon acceptance would ripen into a contract (*Johnson* v. *Stephenson*, 26 Mich. 63), and was not merely an invitation to make an offer, as claimed by counsel for appellee.

2. The offer was made on Friday, October 4th, and it was received in Detroit on Saturday, October 5th. Upon receipt thereof the defendant at once wrote plaintiff acknowledging its receipt and stating that a reply would be made "just as soon as the 50-box shipment arrives and we can examine the quality." A postscript to this letter is added:

"Shipment is at depot now, and we will get it Monday."

On Monday, the 7th, the 50-box shipment having arrived, been examined, and found satisfactory, an unqualified acceptance by wire was forwarded to plaintiff. It is probable that the acceptance by wire was received by plaintiff prior to its receipt of the letter of Saturday. Plaintiff's secretary was unable to state which reached him first. There is no dispute that after the making of the offer on Friday it was not withdrawn by the plaintiff before the receipt of defendant's telegram on Monday.

The law in this State touching the question is set

out in *Cooper* v. *Wheel Co.*, 94 Mich. 272 (54 N. W. 39, 34 Am. St. Rep. 341), where it is said:

"If a proposition be made, to be accepted within a given time, it constitutes a continuing offer, which, however, may be retracted at any time. But if, at any time before it is retracted, it is accepted, such offer and acceptance constitute a valid contract."

This statement of the law has been twice recently quoted with approval. *Adams* v. *Hotel Co.*, 154 Mich. 198 (117 N. W. 551, 19 L. R. A. [N. S.] 919); *Hollingshead* v. *Morris*, 172 Mich. 126 (137 N. W. 527, 41 L. R. A. [N. S.] 310).

In the light of the correspondence antedating the offer, we think it is fair to assume that the plaintiff expected the defendant to examine the shipment of 50 boxes before accepting or refusing the offer. But in any event we are of opinion that a delay from Saturday to Monday in accepting an offer of sale which was in no wise limited as to time, and, being made by letter instead of telegram, indicating no desire for haste upon the part of the vendor, is not an unreasonable time.

We are of opinion that the learned circuit judge was in error in holding that the correspondence did not constitute a binding contract between the parties for the sale of 200 boxes of cheese, and as a consequence that defendant was not entitled to his claimed set-off and recoupment.

The judgment is reversed, and a new trial ordered, with costs to appellant.

STONE, C. J., and KUHN, OSTRANDER, BIRD, MOORE, STEERE, and PERSON, JJ., concurred.