412 P.2d 400

Harry D. PICKETT and Elizabeth R. Pickett, his wife, and George A. Kloepfer, d/b/a Kloepfer Realty Co., Plaintiffs-Appellees,

v.

J. D. MILLER and Opal B. Miller, his wife, Defendants-Appellants.

No. 7765.

Supreme Court of New Mexico.

March 21, 1966.

David F. Boyd, Jr., Gordon W. Coker, Albuquerque, for appellants.

Louis B. Ogden, Albuquerque, for appellees.

MOISE, Justice.

Defendants appeal from a judgment which granted plaintiffs specific performance or, in the alternative, damages for breach of a contract to purchase a house and lot located in Albuquerque. Plaintiffs, Harry D. Pickett and Elizabeth R. Pickett, are husband and wife and own the property in question. Plaintiff, George A. Kloepfer, d/b/a Kloepfer Realty Co., is their real estate agent who acted in their behalf in most matters concerning the sale or rental of the property. Defendants are husband and wife and allegedly agreed to purchase the property.

On October 31, 1963, defendants, through a real estate broker representing them, submitted to plaintiff real estate broker a "form" offer to purchase the property in question. The document, which was entitled "Purchase Agreement," stated in part that, "The purchasers agree to purchase subject to a (sic) eight months lease on the home at 1001 Walker NE., the lease to be assigned to purchaser and all future rents to become property of purchaser." The document also stated that agreement was "* * * subject to purchaser's present home being closed out. (Home has been sold and is in process of closing out.)" It provided that, "* * * Purchaser(s) hereby give(s) broker hereinafter named a specific period of 3 days to complete this purchase agreement, and agrees to keep this offer open for that time." The offer was signed by the defendants as purchasers. Spaces for the sellers to sign were left blank.

Immediately upon receipt of the offer, plaintiff Kloepfer phoned the Picketts in Doylestown, Pa., where they lived, and informed them of the substance of the offer. On November 1, 1963, the following telegram was sent to Kloepfer:

"MRS PICKETT AND I ACCEPT OFFER TO PURCHASE 1001 WALKER BY J D MILLER AT FULL PURCHASE PRICE OF $12,409 SUBJECT TO EXISTING LEASE IF LEASEE (sic) WILL RELEASE ADDITIONAL YEARS OPTION AFTER EIGHT MONTHS TENENT/SEE (sic) OR SOONER."

The communication showed the sender to be "HARRY D. PICKETT."

Kloepfer immediately notified defendants' broker of the contents of the telegraphic message. Defendants' real estate agent then prevailed upon Kloepfer to attempt to do something about the existing lease on the premises so that defendants might assume immediate occupancy. This was accomplished and the tenants vacated the prem-

ises within ten to fifteen days after the request was made.

Defendants were twice notified after November 11, 1963, that the documents necessary to close the sale were ready for signing. They refused to complete the purchase and plaintiffs instigated this action. In order to mitigate damages, plaintiffs obtained a month to month tenant for the property.

Defendants' principal point relied on for reversal is that the purported acceptance of the offer was defective. In support of this contention they argue (1) that the sellers did not sign the purchase agreement; (2) that the property in question was community property and the wife failed to sign the attempted telegraphic acceptance; and (3) that the condition that the present tenants must release their additional one-year option on the property was a new requirement at variance with the original offer. We proceed to examine the validity of these assertions.

/ Defendants maintain that the specified mode of acceptance was the completion of the "Purchase Agreement" by placing the names of the sellers in the blanks designated therefor, and that the attempted acceptance by wire was not a compliance with the terms of the offer. It is recognized that where an offer prescribes a manner of acceptance, that manner must be complied with in order to create a valid contract. On the other hand, if the offer only suggests a manner of acceptance, other reasonable modes of acceptance are not precluded. Rest. Contracts, § 61, and 1 Williston, Contracts (3rd Ed.), § 83. The "Purchase Agreement" provides that the buyers' broker has three days "to complete the purchase agreement," and that if the broker is unable to complete the agreement, the offer is cancelled. In this, the transaction differs from the usual offer where the reference in the "Purchase Agreement" is to the seller's broker. Under the circumstances, we do not see in the language used a requirement that acceptance by the sellers could only be accomplished through the affixing of their signatures at the place provided therefor at the bottom of the "Purchase Agreement." When the sellers are at a considerable distance, and three days are given to complete the agreement, there are reasonable means of acceptance other than the placing of the sellers' signatures on lines in a document which is in Albuquerque, New Mexico, and there is no indication that such reasonable means of acceptance were here prohibited. Agreements may be completed other than by placing one's signature at the bottom of a formal contract. A written offer does not necessarily require the signature of offeree in order to form a complete agreement. Milliken-Tomlinson Co. v. American Sugar Refining Co., (1 Cir.1925) 9 F.2d 809. The agreement may be complete and

within the requirements of the statute of frauds even though it is encompassed in several different writings. 2 Corbin, Contracts, § 512; Pitek v. McGuire, 51 N.M. 364, 184 P.2d 647, 1 A.L.R.2d 830; Boswell v. Rio De Oro Uranium Mines, Inc., 68 N.M. 457, 362 P.2d 991. Under the circumstances here present, including the distance between the parties and the limited time allowed for acceptance, it cannot be said that the use of the telegraph to manifest acceptance was not reasonable. South Branch Cheese Co. v. American Butter & Cheese Co., 191 Mich. 507, 158 N.W. 158. 1 Corbin, Contracts, § 81.

■ Defendants next contend that plaintiffs' attempted acceptance was not identical to the original offer. They argue that the telegraphic reply imposed a new condition. It is not disputed that New Mexico enforces the general rule of contracts to the effect that an offer must be accepted unconditionally and unqualifiedly by the offeree. Polhamus v. Roberts, 50 N.M. 236, 175 P.2d 196, 170 A.L.R. 991. In the instant case, defendants offered to purchase the property subject to an eight months lease thereon. Plaintiffs atempted to accept the offer subject to the existing lease, "if leasee (sic) will release additional years option after eight months tenent/see (sic) or sooner." We need only determine whether the section quoted from plaintiffs' purported acceptance was a new condition which varied from the terms of the original offer.

■ Almost as general in its application as the rule that an offer must be accepted unconditionally, is the qualifying rule that, "an acceptance, however, is not inoperative as such merely because it is expressly conditional, if the requirement of the condition would be implied from the offer, though not expressed therein." Rest. Contracts, § 60, Comment a. See also, 1 Williston, Contracts (3rd Ed.) § 78; 1 Corbin, Contracts, § 86, and 149 A.L.R. 205, 211. In the present case, the lease on the property in question had eight months left to run at which time the tenants held an option to renew the lease for an additional year. This was known to defendants who agreed to accept the property subject to the eight months lease, but did not make mention of the renewal option. The necessary implication of the offer was that they did not purchase subject to the renewal option and that the relinquishment of the option was a condition upon which their offer to buy the property was made dependent. Thus, the plaintiffs acted with an abundance of caution and inserted a condition in their acceptance which merely expressed what would be implied in fact from the offer. 1 Williston, Contracts (3rd Ed.) § 78. Such an act does not negate the existence of a valid acceptance and contract. Cavender v. Waddingham, 5 Mo.App. 457, 464; Curtis Land & Loan Co. v. Interior Land Co., 137 Wis. 341, 118 N.W. 853; Hawaiian Equipment Co. v. Eimco Corporation, 115

Utah 590, 207 P.2d 794; Byford v. Gates Bros. Lumber Co., 216 Ark. 400, 225 S.W. 2d 929, and Milliken-Tomlinson Co. v. American Sugar Refining Co., supra.

Defendants present one final objection to the validity of the telegraphic acceptance. They assert that the property in question was owned by both Mr. and Mrs. Pickett as community property, but that Mrs. Pickett did not join in accepting the offer. As previously noted, the telegram stated, in part, that "Mrs. Pickett and I accept offer * * *," but was signed only, "Harry D. Pickett." Accordingly, we are left to consider whether there was a necessity that Mrs. Pickett be bound by the acceptance and, if so, whether the above language was sufficient to register an acceptance on her part.

■ It is manifest that under our statute the husband and wife must join in all deeds and mortgages affecting community real property. § 57–4–3, N.M.S.A.1953. Thus, it was held that a contract purporting to sell community real estate would not be ordered to be specifically performed where the wife did not join in the husband's agreement to sell. Adams v. Blumenshine, 27 N.M. 643, 204 P. 66, 20 A.L.R. 369.

■ Testimony of Mrs. Pickett relating to her intent in this matter is uncontradicted:

"Q I hand you Plaintiffs' Exhibit No. 1 and ask you if you joined in this telegram of acceptance?

MR. BOYD: Object, if the Court please, the telegram is its own best evidence and it speaks for itself.

THE COURT: She may answer.

A Yes, sir.

MR. OGDEN: You joined in this; it was your desire to accept this offer?

A Yes, sir."

She added that she had probably typed the telegram and that she and Mr. Pickett discussed the details of the offer before deciding to note their acceptance.

On the facts, this case is closely comparable to Viramontes v. Fox, 65 N.M. 275, 335 P.2d 1071. That was a case where the wife of the seller had not signed the contract but her name had been signed by her husband, with a notation that it was done by him. She later joined in signing the necessary papers to complete the transaction, but the purchaser refused to perform. In a suit to collect the amount deposited on the contract, the sellers prevailed. On appeal, we said:

"The failure of appellee's wife to sign does not render the agreement void or unenforcible, as contended by appellant.

She was named in the agreement and was ready, willing and able to convey her community interest and that is sufficient. Section 57–4–3, N.M.S.A., 1953, requiring the wife to sign deeds and mortgages affecting community property has no application to an action for damages on the husband's executory contract for the sale of community realty and we think it immaterial whether the action is by the vendor or the vendee. * * *"

We do not consider whether a different conclusion is required where specific performance is sought. However, see Vanzandt v. Heilman, 54 N.M. 97, 214 P.2d 864, 22 A.L.R.2d 497. Viramontes v. Fox, supra, supports plaintiffs' right to damages and, under the judgment of the court giving defendants the alternative choice of paying damages or specifically performing the contract, they could not be prejudiced.

The conclusions as set forth above dispose of the errors which defendants argue were made in refusing their requested findings of fact and conclusions of law, and in adopting certain other findings and conclusions. The judgment of the trial court is affirmed.

It is so ordered.

CARMODY, C. J., and COMPTON, J., concur.