639 P.2d 566

J. William CORR, Plaintiff-Appellee, and Cross-Appellant,

v.

Richard H. BRAASCH and Bonita Braasch, Defendants and Third-Party Plaintiffs-Appellants, and Cross-Appellees,

v.

Norman R. PALMER, Third-Party Defendant-Appellee and Cross-Appellee.

No. 13,298.

Supreme Court of New Mexico.

Dec. 21, 1981.

Rehearing Denied Jan. 13, 1982.

Lamb, Metzgar & Lines, Bernard P. Metzgar, Albuquerque, for defendants and third party plaintiffs-appellants, cross-appellees.

Ruud & Wells, John M. Wells, Albuquerque, for plaintiff-appellee, and cross-appellant.

Poole, Tinnin & Martin, Harris L. Hartz, Albuquerque, for third-party defendant-appellee and cross-appellee.

## OPINION

PAYNE, Justice.

J. William Corr (Corr), who is a California attorney, filed suit against Richard and Bonita Braasch (Braasches) for damages and specific performance arising out of a real estate purchase agreement. Braasches denied that a contract existed and alleged that if a contract did exist they were entitled to damages from third-party defendant Norman Palmer (Palmer), a licensed real estate broker. Palmer in turn filed a counter-claim against Braasches alleging that he was entitled to a commission on the agreement for sale of property from Braasches to Corr. The court granted judgment of $13,500 to Corr and ordered specific performance. Palmer was awarded damages of $5,000 against Braasches. Braasches appeal and Corr cross-appeals, alleging inadequate damages. We reverse.

Most of the facts in this case are not in dispute. The dispositive issue in this appeal is whether a contract to sell the property had been entered into. We hold that it had not.

Palmer was told by a friend that Corr wanted to invest in property in the Albuquerque area. In May or June of 1977, Palmer contacted Corr and Corr advised Palmer that he was looking for an apartment building, and that he wanted to purchase property with a down payment of 20% or $75,000 maximum. Palmer ran an advertisement in the Albuquerque newspaper from July 3–9 stating that he had a "client" that wanted to invest and had $75,-000 available for a down payment. Richard Braasch saw the ad, called Palmer, and the next day showed Palmer the apartment building that he and his wife owned to see if Palmer's client would be interested. Palmer then told Braasches that he would have to have a listing agreement to protect his commission before he would try to sell the building. Palmer negotiated an open listing agreement between himself and the Braasches. The terms under which the property was listed were $230,000 total purchase price with $75,000 down. Although Palmer wanted a longer period, Braasches agreed only to a thirty-day listing. The agreement provided for a 6% commission if sold on terms acceptable to Braasches. During the thirty-day period, one offer was presented through Palmer to Braasches which was rejected.

On August 10, Palmer requested an extension of the listing agreement which Braasches refused to execute and the agreement expired. Braasches received and rejected two offers subsequent to the expiration of the listing, neither through Palmer. On August 15, 1977, Palmer wrote a letter to Corr suggesting that an offer be made. After the listing expired, Corr typed out a purchase agreement and sent it to Palmer to present to Braasches. Corr offered $230,000 with $46,000 down. Palmer, without the knowledge of Corr, added the following clause: "Sellers accept the offer contained in this Purchase agreement and agree to pay Norman R. Palmer, the Bro-

ker, a sales commission of six percent of the selling price." Palmer presented the agreement to Braasches without telling them that he had added the commission agreement. Braasches changed some of the terms of the offer and in particular changed the commission from 6% to $5,000, a reduction of $6,500. Braasches stated to Palmer that under the terms offered they would not sell the property with a 6% commission. Corr later initialed the other modifications, but neither Corr nor Palmer ever initialed the reduction in the commission. Subsequently, Braasches had their attorney draft an exchange agreement, based on the purchase agreement, which was never fully executed. Final closing of the sale was delayed, and Braasches eventually refused to pursue the sale further.

For there to be a contract, the offer must be accepted unconditionally and unqualifiedly by the offeree. *Picket v. Miller,* 76 N.M. 105, 412 P.2d 400 (1966). The acceptance must be to all terms. *Silva v. Noble,* 85 N.M. 677, 515 P.2d 1281 (1973); *Tatsch v. Hamilton-Erickson Manufacturing Co.,* 76 N.M. 729, 418 P.2d 187 (1966). With certain exceptions not relevant here, the offeror must be notified of the acceptance. *See Restatement (Second) of Contracts* § 56 (1981). The testimony is uncontradicted that Braasches never accepted the offer from Corr containing the 6% commission agreement. The trial court concluded as a matter of law, however, that the purchase agreement was two separate contracts—the first between Corr and the defendants Braasch for the sale of the property and the second between Braasches and Palmer for a $5,000 commission. The court found that the Braasches agreed to sell the property for a total amount of $230,000. The court also found that Braasches agreed separately to the payment of a $5,000 sales commission.

The trial court erred in both respects. It is apparent by looking at the purchase agreement that neither Palmer nor Corr accepted the reduced commission by initialing the change. The only evidence cited on appeal to support the finding that Palmer

accepted a $5,000 commission was Mrs. Braasches statement that she "felt he accepted the commission," although she was unaware of any statement that Palmer made to that effect.

There was also testimony by the closing officer that Palmer had indicated he would accept $5,000 in order to assure that the deal would close. The officer also testified that Palmer said he would work out the remainder of the commission with Braasches. None of these pieces of evidence supports the court's finding that Palmer accepted the offer of a $5,000 commission. Notwithstanding this evidence, Palmer .maintained prior to and throughout the trial that he was entitled to a 6% commission. The trial court's finding that Palmer accepted Braasches' offer is not supported by substantial evidence.

The evidence is uncontradicted that Braasches would sell the property for $230,-000 with $46,000 down only *if* Palmer reduced the commission. When asked why he modified the commission, Mr. Braasche testified that he did so "because of inadequate down payment offered." To hold that Braasches are bound by the sales portion of the agreement yet are not bound by the commission provision would be to selectively enforce the terms of the clause inserted by Palmer, and would introduce precedent for subdividing any contract with multiple terms despite the written manifestation of the parties.

■ We hold that by making their acceptance conditioned on Palmer's assent to the different term, Braasches made a counter-offer to Corr. In other words, Braasches would sell the property on terms offered by Corr *only* if Palmer agreed to the reduction in the commission. Palmer did not agree to these terms. Corr allowed Palmer to transmit the offer on his behalf to Braasches. The offer was modified by the addition of the commission agreement. The reduction in the commission was never accepted by Palmer nor Corr. A reply to an offer which adds qualifications or requires performance of conditions is not an "acceptance," but rather a counter-offer. *Polha-*

*mus v. Roberts*, 50 N.M. 236, 175 P.2d 196 (1946); See *Restatement (Second) of Contracts* § 59 (1981).

Having concluded that there was no contract between the parties, we need not discuss the other questions presented with regard to the alleged contract.

■ Braasches sought to recover damages from Palmer on a theory of tortious interference with contractual relations. However, the trial court did not err in refusing Braasches' requested findings on this issue, and we accordingly uphold its refusal of those requested findings.

The cause is reversed and remanded with instructions to set aside the judgment and enter judgment in favor of Braasches consistent with this opinion.

IT IS SO ORDERED.

EASLEY, C. J., and FEDERICI and RIORDAN, JJ., concur.

SOSA, Senior Justice, respectfully dissenting.

SOSA, Senior Justice, dissenting.

The majority are applying the wrong test to our review.

I find that the findings of the trial court are supported by substantial evidence, and I would not disturb this evidence. In reviewing the case for substantial evidence, the evidence must be considered in the light most favorable to Corr and in support of the findings. The appeals court cannot reverse unless convinced that there is neither evidence nor an inference therefrom which will support the findings of the court. The weight of the evidence must not be considered. All disputed facts are resolved in favor of the successful party and all reasonable inferences indulged in support of the findings. *Williams v. Vandenhoven*, 82 N.M. 352, 482 P.2d 55 (1971); *Gould v. Brown Construction Company*, 75 N.M. 113, 401 P.2d 100 (1965); *Lewis v. Barber's Super Markets, Inc.*, 72 N.M. 402, 384 P.2d 470 (1963); *Jensen v. Allen*, 63 N.M. 407, 320 P.2d 1016 (1958); *Griego v. Wilson*, 91 N.M. 74, 570 P.2d 612 (Ct.App.1977); *Romero v.*

*Melbourne*, 90 N.M. 169, 561 P.2d 31 (Ct. App.), *cert. denied*, 90 N.M. 254, 561 P.2d 1347 (1977).

The trial court concluded that:

The purchase agreement is two separate contracts, one between Plaintiff Corr and Defendants Braasch for the sale of the property, and one between Defendants Braasch and Counter-Defendant Palmer for the payment of a $5,000.00 sales commission.

All of the findings being sustained by substantial evidence, the aforegoing conclusion flows therefrom, and I would affirm the trial court. I feel that there is much more merit to the Plaintiff-Appellee and Cross-Appellant's contention that he was damaged more than the $13,500.00 found by the court when he was led to believe that he was to assume a contract at 9¼% and later found that the percentage of the assumption on the contract had been changed to 17%.

Not agreeing with the majority, I respectfully dissent for the aforementioned reasons.