759 P.2d 194

**Reydesel ROJO, Petitioner,**

**v.**

**LOEPER LANDSCAPING, INC. and Western Casualty and Surety Company, Respondents.**

**No. 17681.**

Supreme Court of New Mexico.

Aug. 11, 1988.

Original Dissent Withdrawn and New Dissent Issued Aug. 16, 1988.

---

408

Matthew L. Chacon, Albuquerque, for petitioner.

Beall, Pelton, O'Brien & Brown, Larry D. Beall, Maureen S. Reed, Albuquerque, for respondents.

## OPINION

WALTERS, Justice.

Reydesel Rojo, an employee of defendant landscaping firm, was injured on January 17, 1987, when he lifted a tree off the bed of a truck. Defendant Western Casualty & Surety Company (Western) made weekly compensation payments to Rojo for his injury. In August of 1987, Western's adjuster and claimant's attorney agreed to the terms of a lump sum compensation settlement agreement. On September 9, 1987, Mr. Rojo signed the settlement documents. The next morning Mr. Rojo was murdered, but before Western found that out it also signed the agreement. On the same day, still without knowledge that Mr. Rojo had died, claimant's attorney filed with the Workers' Compensation Administration the joint petition for approval of payment. Upon discovering prior to a hearing that claimant had died, Western decided to repudiate the agreement. Thus, when the matter came before the administrative officer, Western declared that it no longer agreed to the settlement. The hearing officer thereupon denied the petition for approval of payment of the lump sum settlement, concluding that the respondents at the time of the hearing, "were no longer in agree-

ment on the payment of a lump sum * * * a condition precedent."

Decedent's attorney appealed the hearing officer's decision to the court of appeals which rendered a summary, affirming, memorandum opinion. We granted decedent's petition for certiorari to answer the only issue presented: Whether or not a hearing officer may disapprove payment of a lump sum settlement which has been fairly negotiated, signed, and filed by the parties, solely on grounds that the offeror has elected to repudiate the contract before approval of payment is granted. No question of standing has been raised and we do not address it. *Cf. Chavez v. Regents of University of N.M.,* 103 N.M. 606, 711 P.2d 883 (1985) (suit not barred because not brought by personal representative when situation can be remedied by amendatory pleading under Rules 15(c) and 17(a) of Civil Procedure; overruling *Mackey v. Burke,* 102 N.M. 294, 694 P.2d 1359 (Ct. App.1985)).

The statute provides that amounts payable as workers' compensation may be converted to a lump sum settlement by agreement of the parties and after the agreement is approved by the hearing officer. NMSA 1978, § 52–5–14(B) (Repl.Pamp. 1987). In its calendaring notice, the court of appeals reasoned that the settlement agreement signed by the parties was without effect until approved by the hearing officer because approval was a condition precedent to a valid agreement between the parties. Because the parties were not in agreement at the time of the hearing, the court of appeals held that the hearing officer correctly denied approval.

Although we concur that the hearing officer must find an agreement between the parties before a lump sum settlement payment may be approved, we reverse the court of appeals and remand to the hearing officer for approval of the settlement, for three reasons: (1) the written and signed petition for approval, filed with the Workers' Compensation Administration and presented to the hearing officer, provided explicit evidence of an agreement between the parties; (2) under Section 52–5–14(A),

the hearing officer's decision lacked the necessary grounds for disapproval of payment of the settlement; and, finally, (3) one party's repudiation of the settlement contract does not authorize the hearing officer to provide the remedy of rescission to the repudiating party. Significantly, repudiation is not a basis for disapproving the contract. *See* Section 52–5–14(A).

Section 52–5–12(A) permits the parties to agree to a lump sum settlement payable to the claimant in exchange for claimant's release of the insurer-employer's obligation to make periodic payments. However, nothing in the statute requires that the agreement be in writing. *Esquibel v. Brown Constr. Co.,* 85 N.M. 487, 490, 513 P.2d 1269, 1272 (Ct.App.) *cert. denied,* 85 N.M. 483, 513 P.2d 1265 (1973), expressly so held. Absent a statute of frauds or other cognizable defense, an oral contract may be as binding as a written one. *See Pickett v. Miller,* 76 N.M. 105, 108–09, 412 P.2d 400, 403 (1966). Consequently, a settlement agreement that is reduced to writing and signed by the parties is presumptively conclusive proof of a binding agreement. The record here contains a written settlement contract and petition for approval signed by the parties; that it was signed by both parties is not a matter of dispute. That petition, memorializing the earlier oral agreement of the parties, satisfied the conditions under which approval may be sought for payment of the stipulated sum. *Id.* Section 52–5–13, requiring only that the petition for approval be signed by both parties, was fully complied with. Western may have expressed dissatisfaction with the settlement it had reached, but the hearing officer erred in evaluating Western's hindsight as sufficient to provide a legal basis for concluding that there was no agreement.

Section 52–5–14(A) directs that the hearing officer approve a lump sum payment agreement between the parties if it is fair and equitable and in accord with the Workers' Compensation Act. The hearing officer may disapprove the settlement only if he or she determines that the settlement will not provide substantial justice to the

parties. *Id.* The hearing officer made specific findings that in August, 1987, Western and claimant negotiated a settlement agreement; that the agreement was signed by the parties in September; that the settlement was fair and equitable; and that the settlement would provide justice among the parties.

None of those findings was challenged by either party on appeal, and appellant relies on them for reversal. Findings not challenged on appeal are treated as true by the reviewing court. *State ex rel. State Highway Comm'n v. Sherman,* 82 N.M. 316, 317, 481 P.2d 104, 105 (1971). All of the elements mandating approval and precluding disapproval were found to exist when the agreement was presented to the hearing officer, and the officer lacked any statutory basis, as precisely limited by Section 52–5–14(A), to disapprove it.

The hearing officer erroneously concluded that Western was entitled to withdraw its agreement after both offer and acceptance had been reduced to writing and signed. Consequently, there existed a valid agreement reflecting a binding expression of the parties' intent. In view of the officer's findings made following the hearing, he was without any authority to withhold his approval. It was error to do so.

Although the settlement contract was not expressly attacked on the grounds that Mr. Rojo had died, that argument lurks throughout the record and briefs, and we therefore address it.

■ The contention that a workers' compensation agreement, reached orally in August and committed to paper in September, may be rescinded because the offeree died after acceptance but before payment had been approved is without support in any law to which we have been referred. By agreeing to the lump sum settlement, Western gambled that the claimant might live for the entire periodic payment period, and it thus took the risk that the lump sum settlement would reduce the total benefits that it would have had to pay if, instead, it were to continue making those periodic payments. Periodic payments admittedly would have ceased upon the death of the claimant. § 52–1–47(C). But that death will not occur is also a risk taken by a carrier when it offers to settle long-term compensation payments for a lump sum in order to be released from liability for future payments. *See* NMSA 1978, § 52–5–12 (Repl.Pamp.1988). We assume that Western weighed those considerations in reaching its agreement with decedent. Although from Western's perspective it is unfortunate that claimant died after the oral agreement had been formally executed by both parties, in the absence of mutual mistake of fact, fraud, failure to express the agreement of the parties, or material breach by the other party, claimant's death does not provide grounds to allow Western's rescission of the contract. *Esquibel; Prudential Ins. Co. of America v. Anaya,* 78 N.M. 101, 428 P.2d 640 (1967); *Smith v. Loos,* 78 N.M. 339, 431 P.2d 72 (Ct.App.), *cert. denied,* 78 N.M. 337, 431 P.2d 70 (1967). Nor does death of a party after agreement has been reached satisfy the sole basis authorized under Section 52–5–14(A) for disapproval of payment of the settlement.

The cause is reversed and remanded to the hearing officer with directions, in light of the findings made by him, to approve payment of the lump sum settlement agreed upon by the parties prior to claimant's death.

IT IS SO ORDERED.

SOSA, Senior Justice, and RANSOM, J., concur.

SCARBOROUGH, C.J., and STOWERS, J., dissent.

SCARBOROUGH, Chief Justice, dissenting.

It is unfortunate that Mr. Rojo died before the lump sum settlement agreement was approved by the hearing officer as required by NMSA 1978, § 52–5–14(B) (Repl.Pamp.1987). However, unlike the compromise of a disputed claim for permanent disability in *Esquibel v. Brown Construction Co.,* 85 N.M. 487, 513 P.2d 1269 (Ct.App.1973) cited by the majority, Mr. Rojo sought to exchange his undisputed

right to periodic disability payments for a lump sum payment from his employer. This is not merely a matter of negotiation and contract between the parties. Under Section 52–5–14(A) the hearing officer, prior to approving a lump sum payment and release from further liability, must find that the agreement is fair, equitable and otherwise consistent with provisions of the Workers' Compensation Act. The Workers' Compensation Act disfavors lump sum payments. The Act provides that "It is the stated policy for the administration of the Workers' Compensation Act * * * that it is in the best interest of the injured worker that he receive benefit payments on a periodic basis." NMSA 1978, § 52–5–12(A) (Repl.Pamp.1987). Section 52–5–14(B) only allows for periodic compensation payments to be converted to "lump sum settlement by agreement of the parties *after having been approved* by the hearing officer." NMSA, 1978, § 52–5–14(B) (Repl.Pamp. 1987) (emphasis added). I would hold that as a matter of law the approval of the agreement by the hearing officer is a condition precedent to the very existence of a binding agreement between parties negotiating lump sum payment of workers' compensation benefits. Court custom and practice has consistently been that these settlement agreements are not final until after court approval. Prior to obtaining that approval both parties should be able to rescind a proposed agreement at any time. The policy disfavoring lump sum payments supports this position.

However, even taking the contracts approach of the majority, where the approval of the hearing officer might be deemed a mere condition precedent to execution of the agreement, I cannot agree with the majority opinion. The majority rely on a prior oral agreement between Western and Rojo in order to establish a binding settlement agreement. Whether or not parties to an oral agreement intend to be bound to that agreement prior to execution of a contemplated formal writing is a question of fact which depends on the circumstances of the case. *Stites v. Yelverton,* 60 N.M. 190, 289 P.2d 628 (1955). Such a factual deter-

mination was not part of the findings of the hearing officer.

If, to the contrary, Western and Rojo intended not to be bound by their oral agreement until after the execution of a formal document, there was no contract between them "until its execution by both parties." 1 A. Corbin, *Corbin on Contracts* § 30 (1963 & Supp.1980). The formal document prepared in this case, a joint petition to enter into a lump sum payment agreement, actually was signed by both parties. However, Mr. Rojo died prior to the time Western's representative signed the petition. In my opinion, the intervention of Mr. Rojo's death precluded formation of a contract. The situation is analogous to the supervening death of an offeror; no contract can be formed because the death of the offeror terminates the offeree's power of acceptance even though he had no knowledge of the death. 1 A. Corbin, *Corbin on Contracts* § 48 (1963 & Supp.1980); Restatement (Second) of Contracts § 54 (1981).

I would affirm the decision of the court of appeals. For these reasons, I dissent.

STOWERS, Justice, dissenting.

I dissent from the majority opinion that an *agreement* to commute periodic workers' compensation payments into a lump sum payment, does not require approval by a hearing officer. The majority opinion directly contradicts legislative intent and New Mexico precedent.

The New Mexico Workers' Compensation Act was intended to serve claimants best interests and prevent them from becoming dependent on welfare. *Codling v. Aztec Well Servicing Co.,* 89 N.M. 213, 215, 549 P.2d 628, 630 (Ct.App.1976). *See also* 82 Am.Jur.2d *Workmen's Compensation* § 654 (1976). The New Mexico legislature has determined that periodic compensation payments, simulating wages, best serve claimants' interests. NMSA 1978, § 52–5–12(A) (Repl.Pamp.1987). *See also Codling,* 89 N.M. at 215, 549 P.2d at 630. This comports with the general rule that lump sum awards, instead of periodic payments, in a worker's compensation action

are the exception. *Boughton v. W. Nuclear Inc.*, 99 N.M. 723, 724, 663 P.2d 382, 383 (Ct.App.1983) (citing *Padilla v. Frito–Lay, Inc.*, 97 N.M. 354, 639 P.2d 1208 (Ct.App. 1981)). "[L]ump sum payments are justified only when 'exceptional circumstances' exist." *Woodson v. Phillips Petroleum Co.*, 102 N.M. 333, 335, 695 P.2d 483, 485 (1985) (citation omitted).

To further these goals, the legislature established several requirements which must be met before commuting periodic compensation payments into a lump sum payment. The parties must agree, or special circumstances must exist which clearly demonstrate that a lump sum payment is in the claimant's best interests. NMSA 1978, § 52–5–12(A) (Repl.Pamp.1987).

Once the parties have agreed, the "lump sum payment *agreement* * * * *shall be presented to the hearing officer for approval* * * *."* NMSA 1978, § 52–5–13 (Repl.Pamp.1987). Next, the hearing officer determines whether the agreement is "fair, equitable and consistent with provisions of the Workmen's Compensation Act * * *." NMSA 1978, § 52–5–14(A) (Repl. Pamp.1987). If the agreement meets these criteria, the hearing officer "shall approve the agreement * * *." *Id.* "Amounts payable as compensation may be converted to a lump sum settlement by agreement of the parties *after having been approved by the hearing officer.*" NMSA 1978, § 52–5–14(B) (Repl.Pamp.1987). Only after approval is the agreement binding. The court in *Odom v. Tosco Corp.*, 12 Ark.App. 196, 672 S.W.2d 915 (1984), faced issues similar to those at bar. There, the parties formed a joint petition settlement agreement; however, the claimant died before a hearing to approve the agreement was held. That court determined that the settlement agreement was "not effective because a joint petition hearing had not been conducted and Commission approval had not been rendered prior to the claimant's death." *Id.*, 12 Ark.App. at 200, 672 S.W.2d at 919.

In this case, as in *Odom,* an agreement was never approved. In fact, at the hearing, the parties did not even agree. Although Western and Rojo had previously signed a written lump sum settlement agreement, Western rejected the agreement prior to approval. Without an agreement the hearing officer lacked authority to approve the agreement, absent special circumstances not indicated here. NMSA 1978, § 52–5–12(A) (Repl.Pamp.1978). The mandatory "shall" language used throughout Sections 52–5–12 through 52–5–14, indicates that a hearing officer *must* approve an agreement to commute periodic compensation payments into a lump sum payment. Legislative authority for court approval of lump sum settlement agreements, after a hearing, dates back to 1959. NMSA 1953, § 59–10–5(B) (Pocket Supp.1959).

The majority focus on the criteria for approving an agreement, Section 52–5–14(A). However, those criteria may only be considered once the parties have agreed and have presented their agreement to the hearing officer for approval. When Section 52–5–14(A) is read in context, the true legislative intent requiring agreement approval becomes clear.

Since the parties failed to agree at the critical hearing stage, the hearing officer properly refused to approve the written settlement agreement and the Court of Appeals properly affirmed. For the foregoing reasons I would affirm the decision of the Workers' Compensation Administration hearing officer and the Court of Appeals. I also concur with the points raised in Chief Justice Scarborough's dissent.